**FREIXENET, S.A. and Freixenet USA, Inc., Appellants**

v.

**ADMIRAL WINE & LIQUOR CO. d/b/a Admiral-Cattani Wines, Trentacoste Bros. Inc. and Canals & Nubiola, S.A.**

**Nos. 83–5227, 83–5317.**

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1984.

Decided March 28, 1984.

Stevan J. Bosses (Argued), Edward E. Vassallo, Claire A. Koegler, Fitzpatrick, Cella, Harper & Scinto, New York City, for appellants.

Maxim H. Waldbaum (Argued), Ethan Horwitz, Adda C. Gogoris, Darby & Darby, P.C., New York City, Arthur D. Grossman, Fox & Fox, Newark, N.J., for appellee, Canals & Nubiola, S.A.

Before GIBBONS and BECKER, Circuit Judges and ATKINS, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Freixenet, S.A. and Freixenet U.S.A., Inc. (Freixenet) appeal from two orders of the District Court in Freixenet's suit against Canals & Nubiola, S.A. (C & N) and others.[1] The first order denied a request for a preliminary injunction against C & N's alleged trade dress infringement. The second granted C & N's request for a partial summary judgment on Freixenet's rights to the use of the color black in its wine bottles. We affirm the order denying a preliminary injunction but dismiss the appeal from the order granting partial summary judgment.

### I.

#### The Facts and the Parties

Freixenet, S.A. manufactures a variety of Spanish wines. Freixenet U.S.A., Inc., a wholly-owned domestic subsidiary, imports those wines for distribution in the American market. Freixenet has been commercially active in this country since 1970. Its most popular wine to date has been a sparkling wine known as "Freixenet Cordon Negro." Since its introduction in 1977, more than 2.5 million bottles of "Freixenet Cordon Negro" have been sold.

One of the striking features of "Freixenet Cordon Negro" is the design of its trade dress. While the bottle is of the standard champagne shape, its color is a frosted or matte black. The foil covering the cork is black, as is the background color on the labels. There are two labels on the bottle. The top label is a chevron

---

* Hon. C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation.

1. Other defendants include Admiral Wine & Liquor Co. and Trentacoste Bros. Inc., distributors of C & N products. They have not participated in this appeal.

thinly bordered in gold, with the Freixenet seal in the middle and the Freixenet name on the sides. The main label is in an unbordered black. "Freixenet" and "Cordon Negro" are prominently displayed in buffed gold lettering, the former in an elaborate script. The label identifies the wine as "methode champenoise" and "fermented in this bottle."[2] There is also a gold seal on the top of the bottle. Overall, "Freixenet" appears five times on the face of the bottle—once on top, twice on the top label, once on the main label, and once on the punt.

C & N is also a producer of Spanish wine. C & N has packaged Spanish sparkling wine in frosted black bottles since 1980. C & N's bottle appears to be virtually the same as Freixenet's but the labels differ in a number of respects. The top label (or "neck label") is not a chevron, but a band, which appears to wrap completely around the neck of the bottle. The label is bordered with a thick shiny gold line. Imprinted on the label is the French designation "Vin Brut." Halfway down the bottle a second label runs diagonally from left to right. Between thick gold borders it reads "Imported Sparkling Wine." The main label appears to be a third smaller than Freixenet's. The label has a circular gold seal with the C & N logo in the background, and thick gold borders. The lettering is white, and the wine is clearly identified as "Granvas." The background is black.

C & N argues that it sells its wine in a frosted black bottle because of "the feelings and impressions" of elegance and sophistication that black evokes in a purchaser of liquor." Freixenet charges that C & N uses the frosted black bottle to take advantage of Freixenet's success and to confuse customers into buying C & N wine.

2. The "methode champenoise" involves fermentation of the wine in the individual bottle. (It is known as the "cava" method). In contrast, the "granvas" method ferments the wines in bulk tanks before it is bottled.

3. The complaint also alleged trademark infringement, a claim that has not been pressed on appeal. Freixenet's bottle is listed on the

## II.

### Proceedings Below

Freixenet's motion for a preliminary injunction alleged that the C & N trade dress violated its rights under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the New Jersey common law of unfair competition.[3] On February 18, 1983, the district court denied Freixenet's motion. The court held that Freixenet had not demonstrated a likelihood of success on the merits because the "labeling of the two bottles is so dissimilar as to distinguish the respective brands" in the minds of the consuming public. App. at 232a. The court also ruled that Freixenet could not establish secondary meaning in its trade dress because to do so would give it "exclusive rights to the marketing of Spanish sparkling wines in black bottles of standard shape." App. at 230a.[4]

On April 18, 1983, the court granted the defendants' motion for a partial summary judgment that "as a matter of law, no party, including plaintiffs, may have a monopoly on a color including the color black ...." App. at 238a. Freixenet has appealed both orders.

## III.

### Preliminary Injunction

■ Our review of the denial of a preliminary injunction is narrow. We cannot reverse unless the trial court has committed an obvious error in applying the law or a serious mistake in considering the proof. *SK & F Co. v. Premo Pharmaceutical Laboratories,* 625 F.2d 1055, 1066 (3d Cir. 1980); *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir.1976). To obtain a prelimi-

Supplemental Register of the United States Patent and Trademark Office, but its applications for a listing on the Principal Register have been denied.

4. The court also rejected C & N's argument that Freixenet's trade dress was a non-protectable "functional feature."

nary injunction, a party must demonstrate a reasonable likelihood of eventual success on the merits as well as a probability of irreparable injury if relief is not granted. The trial court must also consider the likely consequences of the decision on other parties and the overall public interest. *See generally Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir.1982); *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Constructors Ass'n of Western Pa. v. Kreps,* 573 F.2d 811, 815 (3d Cir.1978).

### A. Likelihood of Success on Merits

Freixenet alleges that C & N's conduct violates both the New Jersey common law of unfair competition and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[5] A finding that C & N infringed a protected trade dress requires a demonstration that Cordon Negro's trade dress was non-functional, that it had acquired secondary meaning, and that it was likely to be confused with C & N's product by members of the consuming public. The district court ruled that a frosted black champagne bottle was not a functional feature, and since C & N prevailed on other grounds it has not appealed. *See Keene Corp. v. Paraflex Industries, Inc.,* 653 F.2d 822, 824 (3d Cir.1981); *Ives Labs, Inc. v. Darby Drug Co.,* 601 F.2d 631, 642 (2d Cir.1979), *rev'd,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *Mogen David Wine Corp.,* 328 F.2d 925 (C.C. P.A.1964); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602 (S.D.N.Y. 1979).

The dispositive issue is the possibility of consumer confusion as to source. Regardless of how much secondary meaning it possesses, a product's trade dress will not be protected from an imitator that is sufficiently different in its features to avoid such confusion. *See, e.g., Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602 (S.D.N.Y.1979). In the instant case the district court found that the labels of plaintiffs' and defendants' sparkling wine bottles were so dissimilar that consumers were not likely to confuse the two. Freixenet argues that the district court "never properly addressed the issue ...." (Appellants' br. at 32). The court's opinion denying the preliminary injunction discloses otherwise:

> Plaintiffs have ... failed to adequately demonstrate that wine customers will confusedly buy defendants' product in lieu of its own. Plaintiffs bluntly submit that "likelihood of confusion is independently established by a simple visual comparison of the Canals & Nubiola frosted black bottle with the FREIXENET frosted black bottle ...." I find that a simple visual comparison "establishes quite the opposite: the labeling of the two bottles is so dissimilar as to distinguish the respective brands.
>
> In addition, plaintiffs' contention that some wine buyers fail to even glance at labels, but merely ask liquor store owners to find them the "wine in the black frosted bottle" is insufficiently substantiated (especially in view of defendants' conflicting affidavits) to support a finding of irreparable harm in the absence of a preliminary injunction.

App. at 231a. Thus the court clearly held that the labels of the two bottles were so dissimilar as to rule out any possibility of confusion. Our own analysis of the evidence in this record leads us to conclude that the court's finding is not clearly erroneous.

Freixenet also argues that the district court applied the wrong legal standard. It contends that six separate criteria should have been considered, including intent of the defendant, similarity of the products, retail outlets and purchasers, and evidence of actual confusion (Appellants' br. at 34–35). All these elements are helpful in arriving at a finding as to the likelihood of

---

**5.** The standards under the two laws are substantially the same. *See SK & F Pharmaceutical* *Laboratories, Inc.,* 625 F.2d 1055, 1062–65 (3d Cir.1980).

confusion.[6] Nevertheless, it should not be necessary to consider all six when some are dispositive. *See, e.g., Le Sportsac, Inc. v. Dockside Research, supra,* 478 F.Supp. at 609. In the instant case the district court found (for the limited purposes of a preliminary injunction motion) that the differences in the labels were too great to support a finding of likelihood of confusion. It *also* considered Freixenet's evidence of actual confusion and found it insufficiently credible to overcome C & N's conflicting affidavits.[7] The district court's finding that the appellants' evidence did not demonstrate probability of consumer confusion is not clearly erroneous and its conclusion that there was consequently no likelihood of success on the merits is supported on this record. This is a conclusion sufficient to sustain the court's denial of a preliminary injunction. We express no opinion as to the final merits of Freixenet's claim of consumer confusion should it make a different and more extensive record at final hearing.[8]

## IV.

### Summary Judgment

■ C & N's motion for partial summary judgment asked for a determination that "as a matter of law, no party, including plaintiffs, may have a monopoly on a color including the color black ...." The grant of partial summary judgment is not a final judgment, Fed.R.Civ.P. 54(b), and hence is not appealable. *See Richerson v. Jones,* 551 F.2d 918, 921–22 (3d Cir.1977). Freixenet contends, however, that the court's ruling went beyond C & N's motion. Relying on its findings in the preliminary injunction

opinion, the court held that "as a matter of law ... plaintiffs' trade dress cannot acquire a secondary meaning protectable from copying and ... defendant's trade dress does not infringe on plaintiff's rights or constitute unfair competition." App. at 237a. Freixenet urges that while couched in terms of a grant of partial summary judgment, the decision in fact completely forecloses any further proceedings on its claim, and should be treated as a final judgment. See *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

■ To establish secondary meaning, "a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, n. 11, 72 L.Ed.2d 606 (1982); *Ideal Toy Co. v. Plawner Toy Mfg. Corp.,* 685 F.2d 78, 82 (3d Cir.1982); *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 697 (2d Cir.1961). In determining the existence of secondary meaning the court "may consider factors such as length of use, buyer association, extent of sales and advertising, and the fact of copying." *Ideal Toy Corp. v. Plawner Toy Mfg. Corp., supra,* 685 F.2d at 82; *Faberge, Inc. v. Saxony Products, Inc.,* 605 F.2d 426, 428 (9th Cir.1979); *Locatelli, Inc. v. Tomaiuoli,* 129 F.Supp. 630, 634 (D.N.J.1955).

In this instance the district court, according to Freixenet, appears to have merged the issue of secondary meaning with the issue of similarity of dress. The problem

---

**6.** *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 703 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982); *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979); *Car-Freshner Corp. v. Auto Aid Mfg. Corp.,* 461 F.Supp. 1055, 1060 (N.D.N.Y.1978); *John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 319–21 (E.D.Pa.1976), *aff'd sub. nom. Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 605 (3d Cir. 1978).

**7.** This conclusion was amply supported by the record. Freixenet's affidavits from Shaw and Macneil (58a, 61a) were directly contradicted by C & N's McBee, Phillips, and Fried affidavits (148a, 159a, 165a).

**8.** We discuss the district court's treatment of the secondary meaning issue in our discussion of the summary judgment. Discussion of the other preliminary injunction issues—likelihood of irreparable injury and overall interest of the public—is obviated by our disposition of the likelihood of eventual success claim.

arises from its attempt "to determine exactly which features constitute the 'distinctive' aspects of plaintiffs' packaging." App. at 229a. It agreed with Freixenet that the product had to be considered as a whole, but found that the labels of the two wines were so·dissimilar "that their inclusion in the trade dress would actually work to the plaintiffs' disadvantage. In addition, there is nothing remotely unique about plaintiffs' bottle configuration." App. at 229a. Accordingly, the court found that there were only three aspects of Freixenet's product presentation that could arguably constitute a distinctive trade dress—bottle color, color of the foil cork, and the frosted surface treatment. These elements were found to be non-protectable since colors are not protectable.

Such an approach elides the difference between secondary meaning and consumer confusion. Freixenet can credibly allege that its total package—including labels—has acquired secondary meaning. That is, it is possible that consumers associate black frosted champagne bottles adorned with black foil and black, borderless labels containing buffed gold lettering and an elaborate FREIXENET script, with Freixenet itself. This is a different issue than the issue of whether or not C & N's label is so dissimilar from Freixenet's as to obviate any possibility of consumer confusion.[9]

Since, however, the motion for summary judgment was addressed to the use of a black bottle, we do not understand the court to have foreclosed a showing that its overall trade dress has acquired a secondary meaning protectable from copying. The appellant is free to present further evidence of both consumer confusion by the two brands and that of a secondary meaning attached to Cordon Negro's composite trade dress. That being so, we reject Freixenet's contention that we should treat the partial summary judgment as if it disposed of the entire case, and will dismiss

the appeal from the grant of partial summary judgment.

## V.

We will affirm the denial of a preliminary injunction. We will dismiss the appeal from the grant of partial summary judgment that Freixenet cannot acquire a monopoly in the use of a black bottle, but not otherwise.

**9.** We note that the court's observation on the secondary meaning issue implicitly conflicts with *Freixenet, S.A. v. Frank Hartley, Inc.,* No. 82–1095, slip op. (D.Mass. Aug. 26, 1982), *and Freixenet, S.A. v. Jose Freixedas,* No. 82–1601,

slip op. (E.D.N.Y. Oct. 8, 1982), both of which granted preliminary injunctive relief against competing producers of sparkling Spanish wines in black frosted bottles.