**APEX FOUNTAIN SALES, INC., Appellant,**

**v.**

**KLEINFELD, Ernie, Flo Aire, Inc., Kearney, Jr., Ralph, Kearney, Michael, Ralph Kearney & Son, Inc., Appellees.**

**Nos. 86–1241, 86–1563 and 86–1652.**

United States Court of Appeals, Third Circuit.

Argued April 6, 1987.

Decided May 19, 1987.

Norman Perlberger (argued), Norman Greenspan, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Stephen E. Feldman, New York City, for appellant.

Patrick T. Ryan (argued), William J. Lehane, Lawrence A. Nathanson, Drinker, Biddle & Reath, Philadelphia, Pa., for appellees.

Before SLOVITER, BECKER, Circuit Judges and FISHER, District Judge *.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This opinion concerns three separate appeals from seriatim orders of the district court in proceedings to enforce a consent decree. Most notably it addresses the question whether the district court erred in appointing as special masters the members of a panel whose role under the consent decree was to review design changes in certain champagne fountains manufactured and sold by defendant-appellee, Ralph Kearney & Son, to assure that they could not be identified as fountains made by plaintiff-appellant, Apex Fountain Sales. Because the question referred to the special masters was relatively simple, we conclude that the reference was inappropriate under Federal Rule of Civil Procedure 53.

The complex procedural posture of the case also requires us to review the propriety of the initial order of the district court affirming a decision of the design panel. We decide that the presentation of the evidence to the neutral panelist in the absence of the other panelists did not render the award unenforceable. We also conclude that statements in the panel's decision arguably determining the validity of Apex's trademark could not exceed the panel's authority because they were merely dicta.

Finally, we review the district court's acceptance of the masters' report insofar as the report presented pure questions of law. The court accepted the masters' view that Kearney need not continue to present its new design proposals to the design panel so long as it complied with certain design modification suggestions in the initial panel decision. We decide that the consent decree required Kearney to receive prior approval of a design before offering it for sale and that the arbitral panel had no authority to exempt appellees from this requirement. We therefore affirm in part and reverse in part and remand for further proceedings.

## I. Facts and Procedural History

Apex Fountain Sales, Inc. manufactures champagne fountains for sale throughout the United States and Canada.[1] Prior to 1983, it purchased parts for its fountains from Ralph Kearney & Son, Inc., the principal appellee.[2] In early 1983, however, Apex stopped purchasing from Kearney, and in the wake of the ensuing contract dispute, Kearney began manufacturing and producing fountains virtually identical to Apex and even, apparently, using the Apex trademark. Apex sued for infringement of its mark and trade design under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides trademark protection for unregistered marks and trade designs under certain circumstances. The parties resolved their dispute through a settlement agreement which was incorporated into a consent decree entered by the district court on September 4, 1985.

In the consent decree, Apex agreed to purchase from Kearney all the tooling Kearney had used for several fountains advertised in its brochure, and Kearney agreed not to "manufacture or use any tooling which duplicates such tooling in the future." In addition, in paragraph one of the decree, Kearney stated that it:

acknowledge[s] the validity of and will not contest [Apex's] exclusive right, title and interest in the trademarks APEX FOUNTAINS, the vertical oblong slots on fountains, and the profile including the top bowl, column, top of lower bowl, spigot and jet stream ... for champagne fountains in the United States and throughout the rest of the world.

---

* Honorable Clarkson S. Fisher, Chief United States District Judge of the District of New Jersey, sitting by designation.

1. A champagne fountain, often seen at catered affairs, is a decorative device containing a pump which is used for filling glasses of champagne or punch by means of a fountain arrangement.

2. The remaining appellees and defendants, Flo Aire, Inc., Ralph Kearney, Jr., Michael Kearney and Ernie Kleinfeld, are associated with Ralph Kearney & Son., Inc. We will refer to all appellees jointly as Kearney.

In paragraph two, Kearney agreed not to use any mark or design "confusingly similar" to that of Apex. Then, in paragraph seven, the parties set out an arbitration provision for the approval of new fountain designs by Kearney:

> Defendants will change their fountain design so that the fountains can no longer be identified as Apex Fountains and no longer use the Trademarks. Defendants will submit their new fountain designs for prior written approval to a panel consisting of Alvin Gruber, Ralph Kearney, Sr. and a third person to be chosen by the consent of Gruber and Kearney to decide on a majority basis whether the fountain designs meet the above standard and that decision will be binding on the parties.

The parties further stipulated that the agreement would be governed by Pennsylvania law, and in his order incorporating the consent agreement, the district court (Charles R. Weiner, J.) maintained jurisdiction to supervise the enforcement of the decree.

Alvin Gruber was a former executive of Apex, and Ralph Kearney was a former executive of Kearney & Co. For a year following entry of the court's decree, the two could not agree on a third panelist. On petition by Kearney, the district court, without a hearing, appointed a Philadelphia patent and trademark lawyer, Manny Pokotilow, as the third panelist. Against a challenge on appeal that the district court had modified the consent decree improperly by appointing a third panelist without conducting a hearing and without a finding of "exceptional circumstances," this court affirmed on the grounds that the facts were undisputed and that the district court had not abused its discretion. *Apex v. Kleinfeld*, 800 F.2d 1130 (3d Cir.1986).

Kearney then submitted a new design, and Pokotilow scheduled a hearing for October 22, 1985. At the request of Apex's counsel, the hearing was postponed until October 25, but shortly before that day,

Pokotilow learned that Ralph Kearney, a panel member, had a serious health problem and could not attend. Pokotilow then proposed to counsel for both sides that he hear the evidence alone and send his opinion via counsel to Gruber and Ralph Kearney for their review. Apex did not communicate any objection, and Pokotilow scheduled a hearing for November 20, 1985. At that hearing, Apex objected to proceeding without the other panel members, arguing that the consent agreement required all panelists to hear the evidence together. Pokotilow permitted Apex to present its arguments and evidence despite the protest.

Kearney's proposed new design did not use the name Apex Fountain, nor did it contain vertical oblong slots. The hearing therefore concentrated on whether Kearney's design infringed on Apex's trade dress rights in its fountain profile. Following the hearing, Pokotilow, as promised, forwarded a proposed opinion to his fellow panel members.

Pokotilow's opinion rejected Kearney's design. It also suggested a narrow view of Apex's design mark. Pokotilow acknowledged that Paragraph 1 of the consent decree had conclusively established Apex's exclusive trademark rights to the design of its fountain's profile. Despite this acknowledgment, Pokotilow focused his analysis of the "similarities and differences" between the Kearney and Apex fountains "on the extent to which the design feature is related to the utilitarian function of the product." [3] He concluded that the similar "two saucer mirror image" and "annular recess" look of the plant cups at the top of the fountains created a likelihood of confusion. But Pokotilow went further and suggested that because of the functional nature of the remainder of the profile, he would find no likelihood of confusion if Kearney changed its plant cup. He did so despite an obvious substantial

---

**3.** Under commonly accepted trademark principles, a party can only enjoy exclusive rights to a trade design (1) if it has established secondary meaning in the design and (2) if the design is *not* functional. *See Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir. 1984); 1 J. McCarthy, Trademarks and Unfair Competition § 7.23, at 227–28 (2d ed. 1984).

similarity in the appearances of the Kearney and Apex profiles.

As might be expected, each of the other panel members disagreed with parts of Pokotilow's opinion. Gruber, a former executive of Apex, agreed that the Kearney design was infringing, but he rejected Pokotilow's suggestion that changes in the plant cup alone would make Kearney's fountain design acceptable. Ralph Kearney, on the other hand, disagreed with Pokotilow that even the plant cup was infringing, but he agreed that a change in the plant cup would satisfy the requirements of the consent decree.

Each part of Pokotilow's opinion had the agreement of two panelists, and therefore, of the majority. Kearney moved the district court to adopt the Pokotilow opinion. Apex opposed on the grounds: (1) that the panel had not sat as a body at the hearing and thus had violated the consent decree; (2) that the panel had no authority to make design recommendations to Kearney, only to judge each fountain design as it was submitted; and (3) that the panel's failure to find infringement in Kearney's imitation of the Apex profile apart from the plant cup followed from a reevaluation of the scope of the Apex trade design that exceeded the panel's authority and effectively modified the consent decree. Without a hearing, the district court adopted the proposed opinion, and in appeal number 86–1241, the first of our three appeals, Apex renews the arguments it made in the district court.

While this appeal was pending, Kearney exhibited new champagne fountains at a show in Chicago. Two of the new fountains maintained the same profile as those exhibited before the design panel, but they contained a different style of plant cup. Kearney had also removed maple leaf cutouts that had distinguished its previous design from Apex, and had changed its floral filigree ornamentation to a rope style similar if not identical to that used by Apex. In addition, Kearney exhibited a new, larger fountain apparently unlike any fountain previously shown the panel.

Apex responded by filing a motion to hold Kearney in contempt.

In a telephone conference, the district court suggested referring Apex's contempt motion to Pokotilow. Apex responded with a letter on July 29, 1986 objecting to the referral on the grounds that it would exceed the authority of the design panel under the consent decree and that, in any event, Pokotilow was only one member of the panel. Apex also pointed to the relative simplicity of the contempt issue and argued that "the issue of defendants' contempt is one for the Court." Apparently responding to Apex's objections about presenting the issue to Pokotilow alone but rejecting Apex's request for plenary determination by the court, the district court reconstituted the three members of the design panel as special masters and requested them to determine whether the new fountain models were in conformity with the court's order of March 17 adopting the panel's opinion. This referral of the contempt motion to special masters, in an order filed August 14, 1986, is the subject of Apex's second appeal, number 86–1563.

The three masters convened a proceeding and heard arguments but took no testimony. They then issued two differing reports. Pokotilow, joined by Ralph Kearney, concluded that the district court's adoption of the first panel opinion reflected an intention to permit Kearney to make a fountain that complied with the design recommended by the panel in that opinion. "Accordingly," wrote Pokotilow, "the Defendant was not required to again bring to the panel the proposed design to determine likelihood of confusion." Next, Pokotilow concluded that by changing the plant cup design, Kearney had complied with the recommendation of the panel as incorporated into the order of the court and therefore was not in contempt. In the dissenting report, Gruber would have held Kearney in contempt on the grounds both that Kearney had failed to obtain prior panel approval and that the Kearney fountains were confusingly similar to those of Apex.

The masters forwarded their recommendations to the district court. Again with-

out a hearing, the district court issued a one page order on October 1, 1986 adopting the majority report of the masters and finding that the exhibition of the designs in Chicago was in conformity with the March 17 order of the court. In effect, this order rejected Apex's contempt motion. This order is the subject of Apex's third appeal, number 86–1652.

## II. The District Court's Order Upholding the Original Panel Decision

### A. Choice of Law

We first consider the propriety of the district court's adoption of the panel decision of December 18, 1985. Because the panel was acting essentially as arbitrators, we review the panel's decision under the limited standards traditionally applicable to arbitration. The parties have not addressed, however, whether federal or Pennsylvania law determines our standard of review, and we recognize reasonable arguments for the application of either law.[4]

The two laws appear to differ somewhat in the standard of review they permit. Despite limited review of the merits, federal courts have permitted reversal where an arbitrator "manifest[s] an infidelity" to her obligation to interpret the contract, *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), ignores a plain and unambiguous provision of the contract, *see NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir.1975), or even strongly relies on an unambiguous and undisputed mistake of fact, *see National Post Office, Mailhandlers, Watchmen, Messengers and Group*

*Leaders Div. v. United States Postal Service*, 751 F.2d 834 (6th Cir.1985); *Electronics Corp. of America v. International Union of Electrical, Radio and Machine Workers*, 492 F.2d 1255, 1257–58 (1st Cir. 1974). In contrast, under Pennsylvania "common law" arbitration, which applies to arbitration arrangements not explicitly invoking the provisions of the Pennsylvania Arbitration Act, *see Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 460, 383 A.2d 189, 191 (1978), an arbitrator's error of law or fact is unreviewable on appeal even if it "has the effect of varying the terms of the contract." *Id.; see also McDevitt v. McDevitt*, 365 Pa. 18, 73 A.2d 394 (1950) (common law arbitrator's award is not reviewable for mistake either of law or fact).

Despite this different standard of review of the substance of an arbitrator's decision, federal and Pennsylvania law have substantially the same standard for reviewing alleged procedural irregularity. Under Pennsylvania law, a decision under common law arbitration "may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." *La Course on behalf of La Course v. Firemen's Ins. Co*, 756 F.2d 10, 13 (3rd Cir. 1985); *see also Runewicz*, 383 A.2d at 192; 42 Penn.Cons.Stat.Ann. § 7341 (Purdons 1982). Under Federal law, misconduct apart from corruption, fraud, or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denies the party a fundamentally fair hearing. *See Newark Stereotypers' Union v.*

---

**4.** The scope of review of an arbitrator's decision is a matter of substantive law. *See Southland Corp. v. Keating*, 465 U.S. 1, 14–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984) (Federal Arbitration Act creates substantive law displacing state law for certain classes of contracts); *La Course on behalf of La Course v. Firemen's Ins. Co.*, 756 F.2d 10, 13 (3rd Cir.1985) (applying Pennsylvania law to determine scope of review of arbitrator's award). Arguably, therefore, Pennsylvania law should apply because of the stipulation that Pennsylvania law would govern the consent agreement. However, if the consent agreement evidences "a transaction involving interstate commerce," it invokes the jurisdiction of the

Federal Arbitration Act, 9 U.S.C. § 2 (1982), which preempts state law. *See Southland Corp.*, 465 U.S. at 10–16, 104 S.Ct. at 858–61. Several courts have held that federal arbitration law preempts state law even if the contracts stipulate generally that they shall be construed in accordance with a particular state's law. *See, e.g., Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22, 25–26 n. 8 (5th Cir.1980); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1268–70 (7th Cir.1976); *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995 (8th Cir.1972); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 486 F.Supp. 1, 3–4 (D.Neb.1979).

*Newark Morning Ledger,* 397 F.2d 594, 599 (3d Cir.) (exclusion of relevant evidence is ground for reversal only if it "so affects the rights of a party ... that he was deprived of a fair hearing"), *cert. denied* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968); *Nat'l Post Office Mailhandlers,* 751 F.2d at 841 ("standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing"); 9 U.S.C. § 10(c) (1982). Because we do not reach Apex's substantive challenges to the panel opinion, we find that we need not determine whether federal or state law applies. *But see infra* n. 5.

### B. *The Merits*

■■■ Apex first attacks the panel opinion on the grounds that only Pokotilow heard the evidence presented and that Pokotilow forwarded his proposed opinion to the other panelists before he had the opportunity to hear their views as experts in the champagne fountain business. We do not agree, however, that this procedure contravened the consent agreement because that agreement did not stipulate that the panelists must sit together. While we do not endorse this kind of procedure generally, we also do not believe that it was unreasonable under the circumstances. The delays in scheduling the hearing and resulting prejudice to Kearney made Pokotilow's proposal understandable, and Apex failed to object until after the parties had already convened. Additionally, the history of the case demonstrated the likelihood that the partisan panelists would vote as they did. Finally, the partisan panelists had an ample opportunity to review the evidence at the hearing through the transcripts and to make their views known to Pokotilow before his decision became final. Accordingly, we hold that Pokotilow's conduct of the evidentiary hearing alone did not deny Apex a fair hearing, render the award inequitable or unjust, or otherwise prejudice the rights of Apex so as to justify setting the award aside under either the Pennsylvania or Federal standards. *Cf. Turner v. Cox,* 196 Cal.App.2d 596, 16 Cal.Rptr. 644, 649 (Cal.App.Dep't Super.Ct.1961) (absence

of third panelist from hearing did not prejudice losing party).

■■■ Apex next argues that the district court should not have adopted the portion of the panel opinion which stated that the panel would accept a Kearney design so long as it contained a differently styled plant cup. Apex argues first that the very making of such a suggestion exceeded the panel's authority and so should not have been accepted by the district court. Again we disagree. Although nothing in the consent decree authorized a recommendation for design changes, an arbitral panel has inherent authority, unless prohibited, to explain its decisions through a statement of reasons, always a salutary procedure. Because of that authority and because we see no practical way of drawing a line between reasons and suggestions, we find no reason to prohibit a panel from suggesting its views on subjects it must decide in the future. We agree that an arbitral panel cannot expand its authority beyond that given by the arbitration agreement, but so long as recommendations constitute mere dicta, the panel does not exceed its authority. The panel opinion is quite clear that it represents only the panel majority's "opinion as to how a likelihood of confusion can be prevented in the design of the Flo Aire [Kearney] fountain."

■■■ Apex also argues that the district court should have rejected the substance of the suggestion because of its flawed reasoning. Apex argues that the panel applied the wrong legal standard and exceeded its authority by reevaluating the functionality, and therefore the validity, of Apex's exclusive rights to its fountain's profile. However, the fact that the district court adopted the panel opinion as its own did not alter the legal force of this language, which remained mere dicta. Accordingly, the district court's adoption of the panel opinion cannot constitute a modification of the consent decree. We therefore consider it inappropriate at this time to rule on the propriety of any future panel decision that might approve a Kearney de-

sign along the lines suggested in the panel's first opinion.[5]

### III. *Reference to the Special Masters*

■■■ We next consider the district court's referral of Apex's contempt motion to the design panelists reconstituted as special masters.[6] Apex contends that the referral was improper because its motion presented relatively simple questions of fact and law.[7] We agree.

Federal Rule of Civil Procedure 53(b) is clear that referral to a special master is to be "the exception and not the rule.... [I]n actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it." In *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Supreme Court made clear that these exceptional circumstances are to be narrowly construed, rejecting the use of a special master to resolve two complex antitrust cases despite the congestion of the court, the complexity of the issues, the length of time required to try the cases, and the illness of the presiding judge. Indeed, the Court called the referral of these cases to a special master "little less than an abdication of the judicial function" that justified the extraordinary remedy of mandamus. 352 U.S. at 256, 77 S.Ct. at 313. The Court

---

**5.** Apex argues that the panel's unwillingness to find "confusing similarity" from the Kearney profile follows from an improper determination of the [alleged] functionality of Apex's "top bowl, column, top of lower bowl, spigot and jet stream." According to Apex, that determination is at odds with the consent decree, for the stipulation that Apex had exclusive trademark rights in these elements of its profile imports that those elements are not functional for purposes of the arbitration. *See Freixenet,* 731 F.2d at 151; *SK & F, Co. v. Premo Pharmaceutical Lab's, Inc.,* 625 F.2d 1055, 1063 (3rd Cir.1980). On similar reasoning, Apex could also take issue with the statement in Pokotilow's supplemental opinion "that the spigots are a very common design, not in any way identifiable with Apex." The stipulation that Apex had exclusive rights in the spigot may signify that it had become identified with Apex through secondary meaning. *See Freixenet,* 731 F.2d at 151. These arguments are substantial. Their resolution may depend in part, however, on the choice of law question not addressed by the parties. See discussion *supra* at 1094. *Compare Pacific Motor Trucking Co. v. Automotive Machinists Union,* 702 F.2d 176 (9th Cir.1983) (applying federal law to reverse arbitration award that conflicts with unambiguous clause in contract) *and Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers,* 594 F.2d 575, 579 (6th Cir.1979) (same) *with Runewicz v. Keystone Ins. Co.,* 476 Pa. 456, 460, 383 A.2d 189, 191 (1978) (under Pennsylvania law, arbitration award is enforceable even if it "has the effect of varying the terms of the contract"). It also is not clear, under either federal or Pennsylvania law, what if any significance there is by reason of the incorporation of the contract in a consent decree. Apex also claims that the panel erred by failing to apply the so-called "stay further away doctrine" obligating prior infringers to place greater space between their trade names and the infringed mark than is normally required. Because we do not rule on the substance of the panel's recommendation, we also need not decide this claim.

**6.** Because an order referring a dispute to a special master is interlocutory and not subject to immediate appeal, *see La Buy v. Howes Leather Co.,* 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2615 (1971), Apex's second appeal, number 86–1563, was premature. Under this court's rulings in *Cape May Greene, Inc. v. Warren,* 698 F.2d 179 (3d Cir. 1983), and *Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977), that appeal may have ripened with the entry of the district court's final order, thereby providing us with jurisdiction. However, Apex's third appeal, number 86–1652, from the final district court order, itself provides us with jurisdiction over the interlocutory order of referral. *See* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice par. 203.18, at 3–80 & n. 18 (1986) (notice of appeal from final judgment provides appellate court with jurisdiction over all interlocutory orders). Because of our jurisdiction under the third appeal, and in the interest of avoiding unnecessary issues, we will dismiss appeal number 86–1563 and we will consider the arguments presented for and against that appeal in our consideration of appeal number 86–1652.

**7.** Kearney contends that Apex waived its objections to the appointment of the special masters by failing to file a formal objection after the appointment. We believe, however, that Apex made an appropriate objection to the appointment in its letter of July 29, 1986 challenging the court's expressed desire to refer the contempt motion to the panel and urging resolution of the contempt motion by the court. Judge Weiner's summary processing of virtually every motion in this case counsels against an unduly technical approach to the preservation of claims.

reminded that a court may use special masters only "to aid judges in the performance of special judicial duties, as they may arise in the progress of a cause." *Id. (citing Ex parte Peterson*, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920)). Nothing since *La Buy* has suggested an attenuation of this standard. *See Mathews v. Weber*, 423 U.S. 261, 274, 96 S.Ct. 549, 556, 46 L.Ed.2d 483 (1976) (reaffirming *La Buy*); *Bennerson v. Joseph*, 583 F.2d 633, 641–42 (3d Cir.1978) (applying *La Buy*); *see generally* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2605 (1971 & Supp. 1986); Federal Judicial Center, Manual for Complex Litigation, Second § 21.52 (1985).

Kearney attempts to justify the appointment of special masters by citing cases in which courts have upheld the appointment of special masters to supervise implementation of a court order. Kearney's list, however, reads like a "Who's Who" of cases involving major structural injunctions. *See, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1161–62 (5th Cir.) (appointment of special master appropriate to oversee court order dramatically restructuring Texas prison system), *amended in part, vac'd in part, and reh'g den. in part on other grounds*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Halderman v. Pennhurst State School & Hosp.*, 612 F.2d 84, 111–12 (3d Cir.1979) (special master appropriate to supervise reorganization of major health institution); *Gary W. v. State of Louisiana*, 601 F.2d 240, 244–45 (5th Cir.1979) (special master appropriate to supervise multi-year implementation of court order affecting care of all mentally retarded children in Louisiana). As we stated in *Pennhurst*, appointment of a master was appropriate because implementing the court's order would be "a complex and lengthy process, probably involving monitoring, dispute resolution, and development of detailed enforcement mechanisms." 612 F.2d at 111.

■ No analogous needs are present here, and this case does not even remotely meet the showing of exceptional circumstances. Apex's contempt motion raised the single question whether Kearney's exhibition of fountains in Chicago was in compliance with the consent decree and the court order of March 17. That question raised first a purely legal issue involving construction of the consent decree and court order—whether Kearney could exhibit a fountain without prior approval of the panel so long as it made the design changes recommended by the panel. If the answer to this first question was no, that should have been the end of the matter. If, however, the answer was yes, the contempt motion then raised the relatively simple factual question whether Kearney had complied with the design recommendations. To borrow this court's language in *Bennerson*, "After *La Buy*, this is an a fortiori case." 583 F.2d at 642. The special master reference offends Rule 53 and must be set aside.

## IV. *Merits of Contempt Motion*

■ Under Rule 53(e)(2), a district court must accept a special master's proposed findings of fact unless clearly erroneous. A district court's review of the master's proposed conclusions of law, however, is plenary. Because the reference to the special masters was improper, the findings of fact accepted by the district court are void, and we will not comment upon them.[8] We assume, however, that the court's conclusions of law are truly its own; hence, we will subject them to traditional plenary review.

■ Apex's contempt motion presented the preliminary legal question whether Kearney was in contempt for exhibiting fountains without the prior approval of the panel. The masters and the district court held that no approval was necessary so long as Kearney complied with the suggestions in the panel's first decision. However, our construction of the first panel

---

**8.** Because these findings are void, we also need not discuss whether the district court should have held a hearing before accepting one of the

masters' reports pursuant to Federal Rule of Civil Procedure 53(e)(2).

decision and resulting order of the court of March 17, 1986, makes clear that these panel recommendations were mere dicta. They accordingly could not exempt Kearney from the obligation to submit new designs to the panel before exhibiting them.

█ Paragraph seven of the consent decree states unequivocally: "Defendants will submit their new fountain designs for *prior* written approval...." (emphasis supplied) Any order of the court purporting to relieve Kearney of this requirement would therefore represent a modification of the consent decree, which requires a showing of exceptional circumstances. *See United States v. Swift & Co*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932); *Mayberry v. Maroney*, 529 F.2d 332, 335–36 (3d Cir.1976). We do not suggest that the design panel is here for the ages, and circumstances arising in the future may justify modifying the consent decree in order to dismantle it. But those circumstances are certainly not present here and no modification has, in any event, been sought or made. Until such a modification is ordered, the plain language of the decree requires that Kearney submit each new design to the panel.

Because it exhibited new fountains without the prior approval of the panel, Kearney would appear to be in contempt of the consent decree. There may be defenses to the contempt charge, however, and this issue has not been properly presented either to the district court or to this court. On remand, the district court should hold a hearing to determine if Kearney is in contempt, and if so, to determine the appropriate sanction.

## V. *Conclusion*

In appeal number 86–1241, we will affirm the district court's order of March 17, 1986, which accepted the panel decision of December 18, 1985. We will dismiss appeal number 86–1563. In appeal number 86–1652, we will reverse the orders of the district court of August 18, 1986 and remand for further proceedings consistent with this opinion. Parties shall bear their own costs.