

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-1994

# Apex Fountain Sales v. Klienfeld, et al.

Precedential or Non-Precedential:

Docket 93-1943

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Apex Fountain Sales v. Klienfeld, et al." (1994). *1994 Decisions.* Paper 64.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/64

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-1943


APEX FOUNTAIN SALES, INC.

v.

ERNIE KLEINFELD; FLO AIRE, INC.;
RALPH KEARNEY, JR.; MICHAEL KEARNEY;
RALPH KEARNEY & SON, INC.
                                    Appellants



On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 83-06153)



Argued:  March 2, 1994



Before:  SLOVITER, Chief Judge,
ALITO, Circuit Judge and PARELL,[1] District Judge



(Filed   June 29, 1994  )

Robert J. Sugarman (Argued)
Sugarman & Associates
Philadelphia, PA  19103

        Attorney for Appellants

Norman Perlberger (Argued)
Jeffrey A. Cohen
Perlberger Law Associates, P.C.
Bala Cynwyd, PA 19004

   Of Counsel:
        Stephen E. Feldman

_____

[1]Hon. Mary Little Parell, United States District Judge for the
        District of New Jersey, sitting by designation.


1

Kenneth S. Feldman

Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Chief Judge.

The dispute between the parties to this appeal is no stranger to this court. See Apex Fountain Sales, Inc. v. Kleinfeld, 818 F.2d 1089 (3d Cir. 1987) (Apex II). This bitter business litigation shows no sign of abating, and it is likely that we will see it again since neither settlement nor proceedings akin to arbitration have reduced the animosity shown by the parties as well as their lawyers. In this appeal defendant-appellant Ralph G. Kearney & Son, Inc. appeals from a finding of contempt for violating a 1985 consent decree settling a suit initiated by appellee Apex Fountain Sales, Inc. claiming Kearney infringed Apex's trademarks in champagne fountains. We also have pending a related appeal from a permanent injunction involving the same parties but a different fountain. See Apex Fountain Sales, Inc. v. Kleinfeld, No. 93-2150 (3d Cir. June 29, 1994) (Apex IV). While we are cognizant that the parties desire a resolution of this phase of this lengthy litigation, we must dismiss this appeal because the district court's contempt order is not yet final.

**I.**

**FACTS AND PROCEDURAL HISTORY**

Apex Fountain Sales, Inc. manufactures champagne fountains, decorative devices containing a pump that are used for

2

filling glasses of champagne or punch by means of a fountain arrangement. Apex used to purchase parts for its fountains from Ralph G. Kearney & Son, Inc.[2] After a contract dispute between them, Kearney used the parts it manufactured for Apex to market its own, virtually identical, fountains. Apex sued Kearney in 1983 for infringement of its trademark and trade design under the Lanham Act, 15 U.S.C. § 1125(a) (1988). The parties entered into a comprehensive settlement agreement which was incorporated into a consent decree entered by the district court on August 14, 1984.

The crucial portion of the consent decree for purposes of the contempt findings is paragraph seven, which provided:

> Defendants will change their fountain design so that the fountains can no longer be identified as Apex Fountains and no longer use the Trademarks. Defendants will submit their new fountain designs for prior written approval to a panel consisting of Alvin Gruber, Ralph Kearney, Sr. and a third person to be chosen by the consent of Gruber and Kearney to decide on a majority basis whether the fountain designs meet the above standard and that decision will be binding on the parties.

App. at 13.

On January 4, 1985, Apex moved for contempt because Kearney was still selling the fountains it had promised not to sell. On January 24, 1986, the parties entered a stipulation settling Apex's contempt claim for $75,000, releasing "defendants

---

[2]The other defendant-appellants, Flo Aire, Inc., Ralph Kearney, Jr., Michael Kearney and Ernie Kleinfeld, are all associated with Ralph G. Kearney & Son, Inc. and will be collectively referred to as Kearney.

from any and all liability resulting, directly or indirectly, from the conduct alleged in the contempt Motion." App. at 41.

Meanwhile, because the parties could not agree on a third member for the design panel as contemplated by the consent decree, the court, on petition by Kearney, appointed a Philadelphia patent and trademark lawyer, Manny Pokotilow, as the third panelist. Apex appealed the order and we affirmed the court's decision. See Apex Fountain Sales, Inc. v. Kleinfeld, 800 F.2d 1130 (3d Cir. 1986) (table) (Apex I).

The Pokotilow panel convened in November 1985 to consider two fountain designs submitted by Kearney for approval, the Moselle and the Ameretta. Both fountains were rejected on December 18, 1985 because they were likely to be confused with Apex's. See Pokotilow I, App. at 34. However, the panel stated that if certain specific changes were made "the panel will consider these fountains not likely to be confused with those of the Plaintiff." App. at 48. The district court "accept[ed], adopt[ed] and confirm[ed]" this opinion on March 17, 1986. App. at 37.

Kearney altered the fountains to comply with the panel's suggestions, but also modified the fountains in two other respects which Apex claimed made them more similar. Kearney then marketed the two designs and the Grand Chablis (another fountain design), exhibiting them at the Chicago Trade Fair in May 1986. Apex sought to hold Kearney in contempt for failing to get these fountains pre-approved by the panel. The district court appointed the panel as a board of special masters and referred

4

the issue to them. In September 1986, acting in this capacity, the panel reviewed the fountains. In effect its ruling recommended against contempt because it found that: (1) its earlier decision in Pokotilow I authorized Kearney to market fountains which complied with the panel's recommendations without having them reviewed by the panel; (2) the two additional modifications were immaterial; and (3) the Grand Chablis did not violate the consent decree. See Pokotilow II, App. at 49, 52, 56. The district court adopted and confirmed this opinion on October 10, 1986 and found "that the proposed . . . designs submitted to the Panel . . . and displayed at the exhibit in Chicago, Illinois are in conformity with the Order of this Court dated March 17, 1986." App. at 58. Apex appealed.

Our opinion on appeal dealt with three separate issues. First, we held that the statement in Pokotilow I that certain changes would bring the fountains submitted into compliance was "mere dicta," Apex II, 818 F.2d 1095, and thus we declined to overturn the district court's approval of Pokotilow I despite our concerns that such language was contrary to the consent decree. Second, we held that the district court erred in referring the contempt proceeding to a panel of special masters. See id. at 1096-97. Finally, we rejected the holding of the panel in Pokotilow II that "no approval was necessary so long as Kearney complied with the suggestions" in Pokotilow I. We held that the panel recommendations "could not exempt Kearney from the obligation to submit new designs to the panel before exhibiting them." Id. at 1097-98. We concluded that "[b]ecause it

5

exhibited new fountains without the prior approval of the panel,
Kearney would appear to be in contempt of the consent decree.
There may be defenses to the contempt charge, however, and this
issue has not been properly presented either to the district
court or to this court." Id. at 1098. We directed that "[o]n
remand, the district court should hold a hearing to determine if
Kearney is in contempt, and if so, to determine the appropriate
sanction." Id.

After this decision, Kearney continued to market the
fountains approved by Pokotilow II without any changes. Apex
petitioned for contempt in September 1987 and again in August
1988, and although the district court scheduled hearings on at
least two occasions, it never completed them. Then a newly
constituted design panel, Karl L. Spivak presiding, met in July
1989 to consider whether three fountains, the Moselle, the
Ameretta and the Grand Chablis, violated the consent decree. In
its October 6, 1989 decision, the panel rejected the Moselle and
approved the Ameretta and Grand Chablis. See Spivak I, App. at
84. In a second hearing, Apex sought reconsideration of the
approval of the Ameretta and Grand Chablis, and Kearney sought
approval of a modified Moselle. The design panel rejected Apex's
position, and approved all three fountains, the Ameretta, Grand
Chablis, and the modified Moselle, in July 1990. See Spivak II,
App. at 88.

Responding to a fifth motion for contempt filed in July
1992, the district court held two days of hearings in May 1993

6

regarding Apex's pending contempt motions.[3]  The first witness at the hearing was Apex's accountant who testified about its losses in fountain sales.  During cross-examination, the court secured the agreement of the parties that an independent accountant would audit the books of both companies.  The remainder of the hearing consisted of viewing the fountains and hearing testimony from the principals of Kearney and Apex.  After receiving proposed findings of fact and conclusions of law, the district court entered a contempt order against Kearney on July 7, 1993.  It concluded that

> Apex has demonstrated by clear and convincing evidence that Kearney knowingly failed to comply with the requirements of the . . . consent decree in the following respects:
>
> a.  It violated, ab initio, the provisions of ¶ 7 of the parties' agreement by failing to submit its Moselle and Ameretta designs for prior design panel approval.
>
> b.  It exhibited the Grand Chablis fountain at the Chicago trade show which was never shown to the Pokotilow panel.
>
> c.  Kearney continued to market the never approved original Moselle model along with the approved modified Moselle.

App. at 104-05.

The court recognized that the remedy for civil contempt must either insure compliance or compensate for past violations.  To insure compliance, it ordered Kearney to turn over the equipment used to manufacture the infringing articles to the United States Marshall for destruction.  To grant compensation,

---

[3]We note this was some six years after our opinion directing the district court to hold a hearing on the contempt motion.

7

it ordered Kearney and Apex to submit to an audit by "a certified public accountant who shall, using standard accepted accounting principles, determine the net profit which would have been realized by Apex Fountain Sales, Inc. utilizing Kearney gross sales figures of infringing fountains," App. at 108, which would then be entered as a judgment in favor of Apex. App. at 109. "Infringing fountains" was defined to include the Moselle and Ameretta "from the date of the consent agreement" and the Grand Chablis "from the date of first manufacture." App. at 109.

On July 19, Kearney filed a Motion for Reconsideration, Extension, and Partial Stay, and submitted an Amended and Amplified Motion for Reconsideration on July 27. The district court denied the motion for reconsideration on August 31. On September 22, Kearney filed a motion for a stay of the audit and the destruction of the equipment pending appeal. The court stayed its order in part on September 30, ordering the Marshall to store the equipment pending appeal but refusing to delay the audit. Kearney filed its appeal on September 30.

In its contempt order, the court stated that the accounting would be done by an independent accountant stipulated to by the parties within fifteen days of the contempt decree. App. at 108. However, since the parties were unable to agree, the court itself appointed one three months later. While the accountant filed the audit report in February 1994, no judgment containing a final dollar amount has been entered.

## II.

### JURISDICTION

Apex has filed a motion to dismiss the appeal, arguing that because the amount of money that Kearney owes Apex has not yet been determined, no final judgment has been entered. We agree.[4] Our appellate jurisdiction is limited to final decisions. 28 U.S.C. § 1291 (1988). "It is a well-established rule of appellate jurisdiction . . . that where liability has been decided but the extent of damage remains undetermined, there is no final order." Sun Shipbuilding & Dry Dock Co. v. Benefits Review Bd., 535 F.2d 758, 760 (3d Cir. 1976) (per curiam) (collecting cases); see also Republic Natural Gas Co. v. Oklahoma, 334 U.S. 62, 68 (1948) ("[T]he requirement of finality has not been met merely because the major issues in a case have been decided and only a few loose ends remain to be tied up--for example, where liability has been determined and all that needs to be adjudicated is the amount of damages."); EEOC v. Delaware Dep't of Health & Social Servs., 865 F.2d 1408, 1413 (3d Cir. 1989) ("An order which establishes liability without fixing the amount of recovery is generally not final."); Weiss v. York Hosp., 745 F.2d 786, 802 (3d Cir. 1984) ("because . . . additional proceedings, including the determination of certain defenses and of damages, are yet to take place, most of these 'judgments' . . . are not final within the meaning of 28 U.S.C. §1291"), cert. denied, 470 U.S. 1060 (1985).

_____

[4]Since we determine the order is not final, we need not reach the claim Apex asserts in its brief that the appeal was not timely because the motion for reconsideration was ineffective in suspending the 30-day time limit imposed by Fed. R. App. P. 4(a)(1).

Until the court enters a judgment with the precise amount of damages calculated, the extent of Kearney's liability is unknown.  Given the contentiousness of this litigation, it is not surprising that both parties have submitted lengthy motions in the district court objecting to the accountant's findings and seeking a hearing before the court.  See Docket Nos. 118, 121, 122, 123, 124, 130, 133.  Indeed, the district court has recognized that the parties have factual and legal disputes about the accountant's report and has ordered them to submit to it any evidentiary materials no later than July 15, 1994.  Docket No. 135.

It is more than likely that after the district court resolves the issue, one or both parties will dispute the ultimate amount of damages awarded, leading to a second appeal.  This would be contrary to the federal judiciary's general policy against piecemeal litigation.  "Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system.  In addition, the [finality] rule is in accordance with the sensible policy of avoiding the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment."  Van Cauwenberghe v. Biard, 486 U.S. 517, 521-22 n.3 (1988) (quotations omitted); see Catlin v. United States, 324 U.S. 229, 233-34 (1945) ("The foundation of this policy is not in

10

merely technical conceptions of 'finality.'  It is one against piecemeal litigation.").

This understanding is also reflected in our cases holding that a district court order awarding "reasonable" attorneys fees is not appealable until the fees are quantified in order to prevent two appeals--one on whether attorneys fees should be awarded and a second on the amount of the award.  See Pennsylvania v. Flaherty, 983 F.2d 1267, 1276-77 (3d Cir. 1993); In re Colon, 941 F.2d 242, 246 (3d Cir. 1991); Frangos v. Doering Equip. Corp., 860 F.2d 70, 72 (3d Cir. 1988); see also Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1089-90 (3d Cir. 1988) (Rule 11 sanctions may not be appealed until judgment entered on the amount).

Kearney argues that the order is final because determining the precise amount of money due is a "ministerial" or "mechanical" act and thus the order is "final" under what is known as the Forgay-Conrad doctrine.  See Forgay v. Conrad, 47 U.S. (6 How.) 201 (1848); Parks v. Pavkovic, 753 F.2d 1397, 1401 (7th Cir.) ("if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it--in legal jargon, if only a 'ministerial' task remains for the district court to perform--then immediate appeal is allowed"), cert. denied, 473 U.S. 906 (1985); 9 James Wm. Moore et al., Moore's Federal Practice ¶ 110.11 (2d ed. 1994).

11

The district court seems to have viewed the judgment in this way, noting that it had "resolved the legal rights of the parties and provided the formula for calculating the amount of the judgment; determining the dollar amount of damages is merely a ministerial act."  App. at 116 n.1; see also App. at 123 ("we specifically noted that our July order resolved the legal rights of the parties, provided the formula for calculating the amount of the contempt judgment, and rejected any assertion that the order was interlocutory or otherwise unappealable").

In Cromaglass Corp. v. Ferm, 500 F.2d 601, 605 (3d Cir. 1974) (in banc), we described the Forgay-Conrad doctrine as permitting appellate jurisdiction for a "judgment which is final except for ministerial acts."  While not mentioning Forgay, we have continued to recognize that an order is final even if it does not reduce the damages to a sum certain if "the order sufficiently disposes of the factual and legal issues and [if] any unresolved issues are sufficiently 'ministerial' that there would be no likelihood of further appeal."  Polychrome Int'l Corp. v. Krigger, 5 F.3d 1522, 1544 n.52 (3d Cir. 1993).  Thus, in Polychrome, we held that we had jurisdiction of the government's appeal of a district court order invalidating a tax regulation, even though the court did not state the amount of refund to which the plaintiffs were entitled.  Presumably, the court viewed the determination of the amount of taxes paid by each plaintiff as a ministerial calculation.  Accord United States v. Brook Contracting Corp., 759 F.2d 320, 322-23 (3d Cir. 1985); Hattersley v. Bollt, 512 F.2d 209, 213-14 (3d Cir. 1975).

12

The district court's order in this case does not fall within the "ministerial" exception to the final judgment rule. The record of this litigation indicates that the determination of the "net profit which would have been realized by Apex" absent the contemptuous acts will not be easily reached. See Goodman v. Lee, 988 F.2d 619, 625 (5th Cir. 1993) (when calculating damages would be a "nightmare," judgment was not final). While in some circumstances this might be a simple calculation, in this situation it has become a highly contested dispute about Kearney and Apex sales over the past 10 years.

Further, before the order is sufficiently final for review purposes the district court will undoubtedly make particularized findings indicating specifically how the damages are actually linked to the contemptuous behavior it found. It is a general principle that "[t]he relief granted in civil contempt proceedings is compensatory . . . [and] must not exceed the actual damages caused the offended party by a violation of the court's order." Quinter v. Volkswagen of America, 676 F.2d 969, 975 (3d Cir. 1982) (citations omitted); see also Gregory v. Depte, 896 F.2d 31, 34 (3d Cir. 1990) (compensatory fine "must not exceed the actual damages caused the offended party and must be based on evidence of a complainant's actual loss" (citations omitted)).

The numbers, even if the parties had agreed with the accountant's report regarding total Kearney sales of the "infringing fountains," will not speak for themselves. Although we do not express any opinion on the merits, we question whether

the district court intended to assess damages based on the sales of all Moselle, Ameretta and Grand Chablis fountains since 1984, because for at least some of that period Kearney was marketing these fountains with the acquiescence, if not the explicit approval, of the design panel and the district court. A party cannot be held in contempt for acts permitted by a court order simply because that order was later reversed or disapproved, for it is the knowledge of and disobedience of an existing court order which are the predicates for any contempt sanction. See United States v. Sarbello, 985 F.2d 716, 727 (3d Cir. 1993).

In short, while it appears that there were sales by Kearney as to which the district court's contempt order might well be found to be justified, that order is neither final nor reviewable until the court details which of Kearney's sales had a "sufficiently specific nexus" to the violations and the precise amount of loss incurred by the sales. Inmates of Allegheny County Jail v. Wecht, 754 F.2d 120, 130 (3d Cir. 1985); see also Gregory, 896 F.2d at 34.[5] Indeed, when the court enters its final order with the specificity required, it will undoubtedly clarify some ambiguities that appear on the record.[6]

---

[5] We assume the court will also ensure that the damages do not include any sales for which Apex released Kearney in the January 24, 1986 settlement.

[6] For example, the court found that "Kearney continued to market the never approved original Moselle model along with the approved Moselle modified model." App. at 105. It is not clear whether the phrase "continued to market" refers to a date from the entry of the consent decree in August 1984, the panel decision in Pokotilow I in December 1985 rejecting the Moselle, or the panel decision in Spivak I in October 1989 rejecting the Moselle.

14

We make these comments in order to provide the district court with some insight into the specificity that is necessary to ensure proper appellate review.

> Fact finding is the trial court's province. We do remain responsible, however, for the ultimate justness of trial determinations drawn before us. Since this is so, we must know the basis of the trial court's decisions: this Court cannot be left to second-guess the factual basis for the district court's conclusion. Review is our responsibility, and we cannot review bare conclusions. In short, our duty to respect the trial court's factual determinations gives rise to a reciprocal one on its part to tell us the reasons for them. [A] mere statement of a result [] cannot stand.

Chandler v. City of Dallas, 958 F.2d 85, 89 (5th Cir. 1992) (quotations and ellipses omitted); see also Anthuis v. Colt Indus. Operating Corp., 789 F.2d 207, 213 (3d Cir. 1986) ("Of course, a district court is not required to write an opinion explaining every judgment that it renders. But in a complex case such as this one, . . . both the parties and this court should be

---

Kearney claims that if the court meant that Kearney marketed the original Moselle after the decision in Spivak I, the factual findings that the Moselle was marketed "through print advertising appearing in September 1989 and at the National Association of Food Equipment Manufacturers show in Dallas in October 1989," App. at 102, are inapposite because the record shows that the print advertising in September 1989 and the October 1989 show in Dallas preceded the decision in Spivak I. App. at 897, 925, 929-31, 955.

Similarly, before the order is final the district court may want to clarify its finding that the Moselles were displayed in two 1991 tradeshows, App. at 102, because we have found no supporting testimony at the contempt hearing. Photographs of Kearney's displays at the two shows, attached to the affidavit of Apex's president, are not identified anywhere as depicting an unmodified Moselle, and thus there is no contradiction on the record to Ralph Kearney's testimony that he took the Moselle "off the market" after Spivak I. App. at 867, 974-75; see also App. at 422, 961, 971.

15

fully informed as to the bases of the district court's decision.").  We anticipate that, assuming this case is properly appealed after the entry of final judgment, the next appellate panel to review this case will be appreciative of the district court's attention to these details.

## III.

### CONCLUSION

For the reasons set forth above, we will dismiss the defendants' appeal for lack of an appealable order at this time.