855 F.2d 1080
 47 Empl. Prac. Dec. P 38,336, 57 USLW
2150, 12 Fed.R.Serv.3d 1
 George NAPIER, Sr., and Samuel E. Bass, Appellants,
v.
THIRTY OR MORE UNIDENTIFIED FEDERAL AGENTS, EMPLOYEES OR
OFFICERS, Veteran's Administration, a body politic, Ten or
More Unidentified Veteran Administration Agents, Servants or
Employees, The American Legion, A Corporation of business
organization, The Disabled American Veterans, A corporation
or business organization, John Doe, said name being
fictitious, Richard Roe, said name being fictitious, James
Smith, said name being fictitious and The American Red
Cross, a corporation or business organization, Appellees.
 Nos. 87-5394, 87-5511.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 12, 1987.
Decided Aug. 31, 1988.
 
 Samuel E. Bass (argued), Freeman & Bass, P.A., Newark, N.J., for appellant.
 Samuel A. Alito, Jr., U.S. Atty., Kevin J. McKenna (argued), Asst. U.S. Atty., Newark, N.J., for Government appellees.
 Eric L. Hirschhorn (argued), Bishop, Cook, Purcell & Reynolds, Washington, D.C., Philip B. Onderdonk, Jr., National Judge Advocate, Indianapolis, Ind., Ronald Simon, Legal Consultant, Washington, D.C., for appellee, The American Legion.
 Before HIGGINBOTHAM, BECKER, Circuit Judges and SHAPIRO, District Judge*.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This opinion addresses appeals from a substantial award of sanctions imposed against plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. George Napier, the plaintiff and appellant, is a black man who was assigned to a segregated unit while serving in the U.S. Army during World War II. Napier's suit contends that he suffered constitutional deprivations and lasting physical and psychological injuries from the experience. This case is, however, the third lawsuit that Napier has brought seeking redress for these events, which occurred over 40 years ago. Both of the previous suits were determined adversely to Napier on the merits. The district court dismissed Napier's complaint on res judicata, statute of limitations and other grounds. The district court also imposed sanctions against Napier's lawyer, Samuel E. Bass, on the ground that he had filed a frivolous lawsuit.
 
 
 2
 Addressing the merits of Napier's appeal, we conclude that the district court correctly dismissed Napier's complaint. We are faced, however, with three other questions which arise out of Bass' appeal of the sanction. First, we must determine whether the district court's order determining sanctions liability (entered coincident with final judgment on the merits) was appealable before the district court determined the amount of the sanctions. Consonant with our precedent, In re Jeannette Corp., 832 F.2d 43 (3d Cir.1987), we conclude that it was not, and, more importantly, that Jeannette is unaffected by the recent Supreme Court decision in Budinich v. Becton Dickinson & Co., --- U.S. ----, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). We therefore have jurisdiction over Bass' appeal, which was filed within sixty days of the determination of the sanctions amount but not within sixty days of the entry of the order fixing liability for sanctions.
 
 
 3
 Second, we must determine whether, when the United States is the beneficiary of a Rule 11 sanctions award for defending a frivolous lawsuit, the time of the Assistant U.S. Attorney on the case is valued at a market rate, or at some other rate, such as the $75 per hour rate established by the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412(d) (1982), or the government's actual costs. We conclude that the $100 per hour awarded on this case for the services of the Assistant U.S. Attorney was an appropriate exercise of discretion, as was the total amount awarded the government ($4,260).
 
 
 4
 Third, we must determine the propriety of the district court's award of $17,163 to the defendant American Legion for the work of its several counsel in defending the lawsuit in view of the fact that there was not only duplication of effort with counsel for the government but also that three attorneys for the Legion expended over 117 hours to defend this patently frivolous lawsuit. We conclude that defendants had a duty to mitigate, and that the district court's determination of a reasonable fee need not include full compensation for all expenses incurred. Because the district court did not assess the reasonableness of the fee in light of these principles, we conclude that it abused its discretion in making this large award, and we will remand for further proceedings on that aspect of the case.
 
 I. PROCEDURAL HISTORY
 
 5
 On August 25, 1986, Napier filed a complaint, signed by his attorney, Bass, naming as defendants "Thirty or More Unidentified Federal Agents, Employees or Officers," the Veterans' Administration (VA), "Ten or More Unidentified Veterans' Administration Agents, Servants or Employees," the American Legion, the Disabled American Veterans, the American Red Cross, and three fictitious defendants. After noting that Napier had served in a segregated unit of the Army between October 31, 1942 and June 20, 1944, the complaint alleged, inter alia, that Napier suffered physical and psychic injuries and various constitutional deprivations as a result of his service, and that the defendant veterans' support organizations had perpetuated the harms by failing to advise him of his rights and remedies and by failing to provide fair proceedings to redress his grievances. Because the district court dismissed plaintiff's complaint on the pleadings, we will treat the complaint's allegations as true. See Labov v. Lalley, 809 F.2d 220, 221-22 (3d Cir.1987).
 
 
 6
 The complaint sought damages and costs against the defendants and an order requiring the Veterans' Administration to reopen Napier's request for disability benefits. Several motions quickly followed: the government moved for dismissal on res judicata grounds; the Legion moved for dismissal for defective service of process; both the government defendants and Legion moved for summary judgment on statute of limitations grounds; and both moved for attorney sanctions under Fed.R.Civ.P. 11. Finally, Napier moved for an enlargement of time within which to serve the Legion.
 
 
 7
 The district court, by order entered May 20, 1987, granted the defendants' motions. The district court's decision was based on a number of discrete grounds. First, the court held that Napier's action was barred by res judicata in view of the fact that Napier had filed two earlier actions which had been decided adversely to him on the merits: (1) an action filed in 1960 seeking recovery for disability arising from his World War II military service and subsequent treatment, which was dismissed for lack of jurisdiction and on statute of limitations grounds, see Napier v. Veterans' Administration, 187 F.Supp. 723 (D.N.J.1960), aff'd per curiam, 298 F.2d 445 (3d Cir.), cert. denied, 371 U.S. 186, 83 S.Ct. 266, 9 L.Ed.2d 228 (1962); and (2) an action filed in 1976 alleging that he "suffered deprivation of his constitutional rights ... as a result of the circumstances to which he was subjected during his period of active duty with the United States Army," App. at 98, which was dismissed for want of prosecution in 1977.[1]
 
 
 8
 Second, the district court dismissed the complaint against the American Legion for improper service, Fed.R.Civ.P. 4(d). The complaint was served on Raymond L. Zawacki, an employee of the Department of New Jersey of the American Legion, but the Department is a legal entity separate from the named defendant, the national organization, and neither Zawacki nor anyone in his office is the designated agent of the American Legion. Third, because 38 U.S.C. Sec. 211(a) divests federal courts of the power to review determinations involving the Veterans' Administration, the district court determined that it lacked jurisdiction to review Napier's claims against the Veterans' Administration.
 
 
 9
 Fourth, the district court granted the motion to dismiss on grounds of statute of limitations. Having found the applicable statute to be New Jersey's two-year statute of limitations for tort actions, the court noted that "it appears the conduct which is the subject of the 1986 Complaint arose more than 42 years ago." App. at 114. Finally (and alternatively), the district court determined that the complaint failed to plead the constitutional violations with the particularity required by Fed.R.Civ.P. 8(a) and also that the defendants were entitled to the equitable defense of laches for lack of diligence by Napier in failing to prosecute his claim.
 
 
 10
 The district court then turned to consideration of the Rule 11 motion. The court noted that Napier's own counsel (Kenneth Walker, of Freeman & Bass) had conceded at a hearing on a motion for dismissal and sanctions that the 1960, 1976 and 1986 actions were essentially identical except that the 1986 complaint added unnamed government agents, the American Red Cross, the Disabled American Veterans, and the American Legion as additional defendants. The court concluded that, particularly in light of the fact that Sam Bass had served as counsel for Napier in the 1976 action, it was abundantly clear that the 1986 complaint was not "well grounded in fact." App. at 112. The court determined that the complaint demonstrated a "lack of legal merit and the total void of any argument to support the extension, modification, or reversal of existing law as well as the disregard of the 1960 and 1976 actions." App. at 122.
 
 
 11
 In view of these determinations, the district court added to its May 20, 1987 order dismissing the complaint on the above-noted grounds a provision that "sanctions shall be imposed on plaintiff's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. Counsel are to submit appropriate documentation of costs and fees in this matter." App. at 91. A notice of appeal from the May 20 order dismissing the complaint was timely filed on June 15, 1987, but only on behalf of Napier, and not on behalf of counsel, against whom the sanctions order ran.
 
 
 12
 On June 26, 1987 the district court held a hearing to determine the appropriate amount of Rule 11 attorneys' fees. The government defendants and the Legion submitted detailed documentation of their counsel fees and costs. On June 29 the district court entered a judgment against Samuel E. Bass in the amount of $21,423.21 ($4,260 for the government and $17,163.21 for the Legion). On August 4, 1987, less than sixty days after the June 29 order (sixty days is the allowable appealable period in actions involving the government under Fed.R.App.P. 4(a)(1)), though more than sixty days after the May 20 order in which the district court determined sanctions liability, an "amended" notice of appeal from the May 20 order was filed on behalf of Bass as well as Napier. Thus, Napier appeals from the dismissal of his complaint, and both Napier and Bass appeal the award of sanctions and the sanctions amount.
 
 II. DISMISSAL OF THE COMPLAINT
 
 13
 As we have explained, the district court dismissed the complaint on five legal grounds. Our review of an order dismissing a complaint involves a question of law and is therefore plenary. D.P. Enterprises v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984). We must "determine whether in the light most favorable to [the plaintiff] 'it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief.' " Paolino v. Channel Home Centers, 668 F.2d 721, 722 (3d Cir.1981) (quoting Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957)). The record so clearly supports the district court's dismissal on a variety of grounds that we might dispose of this issue summarily. However, since the propriety of sanctions may depend upon the degree of baselessness of the claim, we turn to a discussion of three of the grounds for dismissal.
 
 A. Res Judicata
 
 14
 This is the third action Napier has brought based upon his military service during World War II. All three actions alleged error in the decisions made by the Veterans' Administration, psychic injury stemming from plaintiff's segregated treatment, and deprivation of constitutional rights.
 
 
 15
 In 1960, acting pro se, Napier sought various forms of relief from the V.A., its Administrator, and the United States relating to his claim for disability benefits. Specifically, he sought a determination that he suffered from a permanent and total disability stemming from his segregated military service and was therefore entitled to greater compensation than he had been receiving from the Veterans' Administration, retroactive to June 31, 1944. Napier v. Veterans' Administration, 187 F.Supp. at 725. The district court dismissed, on grounds of, inter alia, lack of jurisdiction over the named defendants, failure to state a claim, and expiration of the statute of limitations, which the court determined to have expired eight years prior to the commencement of the 1960 action.
 
 
 16
 In 1976, Bass instituted a second action against the VA on behalf of Napier. In the complaint, Napier reiterated that he served as a member of a racially segregated unit during World War II, as a result of which he "suffered depravation of his constitutional rights ... and deprivation of his rights as a United States citizen as a result of the circumstances to which he was subjected during his period of active duty with the United States Army aforesaid." App. at 40-41. Napier also claimed to have suffered physical disability as a result of his military service. In addition, he alleged that his VA claim was not satisfactorily adjudicated and that the VA had failed to consider his "new evidence ... concerning psychic trauma [resulting from his service in a segregated unit.]" App. at 41. As in the 1960 action, a battery of defenses was proffered by the VA: failure to state a claim, lack of subject matter and personal jurisdiction, res judicata, expiration of the statute of limitations, and laches. Upon repeated failure of plaintiff's counsel to appear for scheduled conferences, a magistrate's report recommended dismissal of the complaint. The report was adopted by the district court and the action was dismissed with prejudice by order dated October 26, 1977.
 
 
 17
 Napier's former allegations concerning violations of his constitutional rights are repeated throughout the 1986 complaint, which is at issue here, with various modifications. In addition to the VA, the complaint named as defendants the American Legion, American Red Cross and various unnamed or unidentified parties. Although the complaint lists five separate counts, the causes of action as alleged against each defendant are indistinguishable. Napier alleges once again not only violation of his constitutional rights from his segregated service between 1942 and 1944, but also that these alleged violations were "compounded" by the inadequate advice he received from the defendants concerning his federal rights. App. at 11, 15.
 
 
 18
 The claim-preclusive aspect of res judicata requires a showing by the defendants that there has been: (1) a final judgment on the merits; (2) a prior suit involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action. United States v. Athlone Indus., Inc., 746 F.2d 977 (3d Cir.1984). The district court's May 20, 1987 opinion contains an exhaustive analysis of the record and comparisons of the 1960, 1976 and 1986 actions. Although the district court found it difficult to ascertain exactly what events or actions gave rise to Napier's allegations and for which specific wrongs he sought redress, it concluded that all of plaintiff's allegations of error, deprivation of constitutional rights, and the infliction of psychic and psychiatric injuries stem from his forced membership in a racially segregated army unit, the sufferance of racially segregated treatment, and the failure of the defendants to advise Napier of his constitutional rights. According to the district court, the only distinction between the 1986 action and the 1976 and 1960 actions is the inclusion in the 1986 action of a "constitutional tort" claim.
 
 
 19
 Napier contends that the 1986 action is not res judicata because it includes constitutional and Bivens claims, which were not before the court in the 1960 action. The defendants respond that, despite the addition of parties and theories of recovery, however, "an essential similarity of the underlying events giving rise to the various legal claims" remains. United States v. Athlone Indus., Inc., 746 F.2d at 984 (quoting Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir.1982), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983)).
 
 
 20
 The doctrine of res judicata precludes the relitigation of matters based on the same cause of action that were or could have been raised and resolved in a prior proceeding. See 1B J. Moore & J. Wicker, Moore's Federal Practice p 0.405 at 179 (2d ed. 1984) (citing numerous cases). It is clear that Napier's constitutional claims involve the same cause of action as his earlier claims and could have been included in his earlier complaints. Hence, the district court correctly precluded him from raising them in this case, unless, as Napier argues, the defendants were not in privity with the parties to the earlier actions. We agree that the Legion is not in privity with the government defendants in the earlier actions and thus that the claims against the Legion are not precluded by res judicata. The determination that res judicata does not bar the claims against the Legion does not alter the conclusion that res judicata bars the claims as to the other defendants who were parties or privies to the earlier actions, however.[2]
 
 
 21
 We further note that even if the 1960 action had not precluded Napier's 1986 action, the dismissal of the 1976 action (which named the VA as a defendant) for failure to prosecute would have precluded the 1986 action. Under Rule 41(b) of the Federal Rules of Civil Procedure, a dismissal for failure to prosecute "operates as an adjudication upon the merits," Fed.R.Civ.P. 41(b), and thus acts as a dismissal with prejudice, barring further action between the parties. Kimmel v. Texas Commerce Bank, 817 F.2d 39 (7th Cir.1987) (Rule 41(b) dismissal serves as final judgment on the merits).
 
 
 22
 The district court was therefore correct in dismissing the complaint against the Veterans Administration on res judicata grounds.
 
 B. Statute of Limitations
 
 23
 Napier's current complaint states a claim under 42 U.S.C. Secs. 1981 and 1983, alleging that his constitutional rights were violated when he was conscripted and placed in a racially segregated unit from 1942 to 1944. Under Goodman v. Lukens Steel Co., --- U.S. ----, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), and Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the correct statute of limitations for Secs. 1981 and 1983 actions is the state statute of limitations for personal injury tort actions. As we have noted, the district court applied a two-year statute of limitations to the 1986 action. See N.J.Stat.Ann. Sec. 2A:14-2 (West 1987) (two-year limit for tortious personal injury action). The district court determined that the conduct that is the subject of the 1986 complaint arose more than forty years ago, thereby barring the suit.
 
 
 24
 Napier argues that veterans' benefits are analogous to workers' compensation benefits and that Napier's claims are therefore subject to the unlimited statute of limitations for compensation for occupational disease. See N.J.Stat.Ann. Sec. 34:15-34 (West 1988). Additionally, Napier contends that his action against the government defendants based on Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is not barred because there is no statute of limitations for Bivens actions. These arguments are frivolous and fail to circumvent the two-year statute of limitations bar.[3] We conclude that the district court was correct in dismissing the complaint against all of the defendants on statute of limitations grounds.[4]
 
 
 25
 C. Lack of Subject Matter Jurisdiction With Respect to the
 
 Veterans Administration
 
 26
 A different type of question arises with respect to Napier's claim against the Veterans' Administration: whether the district court possessed subject matter jurisdiction over the complaint. The district court dismissed Count 3 of the complaint, which alleged error in the Veterans' Administration determination of Napier's total disability benefits, on the ground that 38 U.S.C. Sec. 211(a) divests the federal courts from reviewing VA determinations.[5] Section 211(a) provides that:
 
 
 27
 the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action of mandamus or otherwise.
 
 
 28
 38 U.S.C. Sec. 211(a) (1982). Despite the 211(a) proscription against federal court review of veterans' benefits determinations by the VA, Napier contends that the federal court has "constitutional jurisdiction" over such determinations. Napier Br. at 16. Although Napier is correct that the jurisdictional limitation of Sec. 211(a) is inapplicable to a constitutional attack on veterans' benefits legislation, Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); Rescigno v. Walters, 773 F.2d 47 (3d Cir.1985), Napier has not made such a claim in this action. Napier has alleged that "[t]he psychic trauma emanating [from segregated military service] is the subject of constitutional right and recognition in his case." Napier Br. at 21. A simple assertion such as that, however, will not enable Napier to bypass the clear prohibition of Sec. 211(a). The district court was correct in dismissing the complaint against the VA for lack of subject matter jurisdiction.
 
 
 29
 Having concluded that the district court correctly dismissed the complaint against all defendants on one ground or another, we turn to the decision to impose a Rule 11 sanction against Bass.
 
 
 30
 III. APPEALABILITY OF THE RULE 11 SANCTIONS ORDER
 
 
 31
 The district court's May 20, 1987 order stated that "sanctions shall be imposed on plaintiff's counsel." On June 12, 1987, a notice of appeal was filed on behalf of Napier stating that he was appealing the order "dismissing plaintiff's complaint against all parties to this action and imposing sanctions pursuant to Rule 11." App. at 4. The notice was filed well within the 60-day time period required for appeals in cases in which the government is a party, see Fed.R.App.P. 4(a)(1), but Bass, against whom the sanctions order was directed, was not a party to the appeal. On June 29, 1987, the district court entered judgment against Bass and in favor of the United States in the amount of $4,260 and in favor of the Legion in the amount of $17,163.21. On July 27, 1987, the clerk of this court wrote to Bass advising him of the need to file a separate appeal from the sanctions order. On August 4, 1987, 76 days after entry of the May 20 order, but only 36 days after the June 29 order, an "amended" notice of appeal was filed which included Bass as well as Napier. If the appealable sanctions order is the June 29 order fixing the sanctions award and entering judgment, Bass' appeal is clearly timely.[6]
 
 
 32
 The defendants argue that Bass' appeal with respect to the sanctions was untimely. They say that Bass had to appeal the May 20, 1987 order determining that sanctions would be levied against him and that his August 4 appeal was out of time. Concomitantly, the defendants maintain that Napier's June 12 notice of appeal was ineffective as to the Rule 11 determination because Napier lacks standing to challenge an order imposing sanctions solely upon his counsel.
 
 
 33
 As a general rule, when a district court determines liability before determining the damages amount, the liability determination is not appealable until judgment has been entered on the amount. In re Jeannette Corp., 832 F.2d 43, 45 (3d Cir.1987) ("until fixed in amount, an award of attorneys' fees is not a final order for purposes of appeal"); Sauter v. Ross Restaurants, Inc., 674 F.2d 194, 197 (3d Cir.1982) (decision is appealable if it terminates litigation and "leaves nothing to be done but to enforce" the judgment).[7] In re Jeannette Corp. held that l"[i]f sanctions are to be an assessment of counsel fees or expenses, they must be fixed before the order is final and appealable." 832 F.2d at 46. In re Jeannette Corp. is dispositive of this question unless recent Supreme Court jurisprudence undermines it.
 
 
 34
 In Budinich v. Becton Dickinson & Co., --- U.S. ----, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the Supreme Court held that a determination of liability and damages is final despite a pending determination of costs and attorney's fees. The rationale of Budinich is that the determination of costs and fees following entry of judgment involves considerations distinct from the underlying merits of the action itself. See West v. Keve, 721 F.2d 91 (3d Cir.1983) (viewing fee determination as collateral to merits decision thereby requiring appellants to appeal from earlier merits decision). We acknowledge a superficial similarity between the determination of the sanctions amount here and a determination of costs and attorneys fees such as might render the district court's May 20 order an appealable order. We think that the better approach, however, is to analogize the situation before us to the traditional liability and damages scenario: the May 20 order determined liability, but the court's order was not final and appealable until the June 29 order, which fixed damages. That was obviously the district court's view, for the May 20 order simply directed that "sanctions shall be imposed on plaintiff's counsel pursuant to Rule 11." App. at 91 (emphasis added). By using the future tense, the district court indicated that it contemplated imposing sanctions in its later order, and that the May 20 order was not its final order. Cf. United States v. Sleight, 808 F.2d 1012 (3d Cir.1987) (in criminal case, order that reasonable restitution shall be paid is not the final, appealable order, but only the order stating exact amount is appealable).
 
 
 35
 More importantly, however, the decision to impose sanctions and the decision fixing the amount of the sanction are far more closely intertwined, both substantively and practically, than the decision about counsel fees and costs is to the underlying merits. Rule 11 "combines the concepts of deterrence and reimbursement," hence the district court in a sanctions determination may require "the offending client, lawyer or both to pay all or part of the adversary's counsel fees incurred as a result of the violation." Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir.1987) (emphasis added). The traditional fee shifting determination is not so complex. Moreover, policy reasons support this view. To require an appeal from the decision to impose sanctions would engender needless appeals--which never would have been filed had the sanctions been fixed in a relatively small amount, a not uncommon occurrence. See In re Jeannette Corp., 832 F.2d at 45 (noting "concerns about duplicate expenditures of time and resources in coping with separate appeals initially from the award of fees and later from the calculation of the amount"). Also supporting our conclusion is our longstanding antipathy to piecemeal appeals. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 92 (3d Cir.1988) (adopting supervisory rule requiring counsel to file Rule 11 motions before entry of final judgment by district court "to eliminate piecemeal appeals"). Thus nothing in Budinich undermines our earlier jurisprudence.
 
 
 36
 Because we find that the June 29 order constituted the final, appealable order on the sanctions issue, and that Bass' appeal was timely, we have jurisdiction over the appeal, and must therefore turn to the merits of the sanctions order.
 
 IV. IMPOSITION OF SANCTIONS
 
 37
 Fed.R.Civ.P. 11 requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim.[8] Rule 11 therefore is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." Lieb v. Topstone Indus., Inc., 788 F.2d 151 (3d Cir.1986) (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir.1986)).
 
 
 38
 To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court. "The legal standard is one of reasonableness under the circumstances." Gaiardo v. Ethyl Corp., 835 F.2d at 482 (citing Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535 (3d Cir.1985)). Napier contends that the imposition of Rule 11 sanctions conflicts with a strong policy favoring access to the courts for constitutional litigants such as himself. The defendants rejoin that under these facts, not only did the district court not abuse its discretion by imposing sanctions, but under the circumstances of this case it was required to levy sanctions in light of the mandatory language of Rule 11. See note 8 supra. The district court has substantial discretion to determine the nature and extent of a sanction. Lieb v. Topstone Indus., Inc., 788 F.2d at 157. We review the district court's decision to levy sanctions for abuse of discretion. Holtzman, 775 F.2d at 540.
 
 
 39
 Bass' filing for Napier of a claim clearly precluded by the statute of limitations and identical to at least one, and possibly two, other claims already adjudicated on Napier's behalf was legally frivolous. In addition to the res judicata bar, the procedural defects in the pleadings, service and filing of the 1986 action underscore counsel's inattention to the rules. Hence, Bass had no factual or legal justification for signing the 1986 complaint and we endorse the district court's determination that Napier's 1986 action was "not well grounded in fact." See Kurkowski v. Volcker, 819 F.2d 201 (8th Cir.1987) (sanctions granted for repeated filing of "substantially identical" claims). Moreover, Bass advances no argument on appeal that could be construed as advocating a good faith extension or modification of current law. Cf. Hurd v. Ralphs Grocery Co., 824 F.2d 806, 809-11 (9th Cir.1987) (plausible, clearly labelled argument for change in existing law not violative of Rule 11). His assertion that the imposition of sanctions violates public policy concerns by chilling attorney incentives to file civil rights cases is, on the record, a mere hollow platitude which has no relevance to the facts.
 
 
 40
 This court has set aside Rule 11 sanctions that it thought undermined reasonable efforts to change existing law. See, e.g., Glaser v. Cincinnati Milacron, Inc., 808 F.2d 285 (3d Cir.1986). The case sub judice does not implicate these concerns, however. We do not denigrate Bass' (or Napier's) efforts to redress a terrible wrong inflicted on many black servicemen who were forced to serve in segregated units. But settled procedures cannot be thrown to the winds, however lofty the cause. The district court did not abuse its discretion in determining that Bass should pay sanctions here.
 
 V. AMOUNT OF THE SANCTIONS
 A. Introduction
 
 41
 Rule 11 specifically authorizes as one available sanction an award equivalent to the movant's legal fees. Fed.R.Civ.P. 11. Yet, Rule 11 does not require an award of actual fees. See Eastway Constr. Corp. v. City of New York, 821 F.2d 121, 122 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (the full amount of legal fees "need not be routinely awarded."). As the Fifth Circuit noted in Thomas v. Capital Security Services, Inc., 836 F.2d 866, 879 (5th Cir.1988) (en banc), "[w]hat constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation." In short, the courts retain discretion to tailor the sanction to the violation.
 
 
 42
 Although Rule 11 sanctions are designed to deter frivolous lawsuits, the victim of a frivolous lawsuit is charged with a duty to mitigate, using reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive. See Dubisky v. Owens, 849 F.2d 1034, 1037 (7th Cir.1988) ("A party defending against a frivolous paper has a duty under Rule 11 to mitigate its fees and expenses by resolving frivolous issues quickly and efficiently."); Thomas v. Capital Sec. Servs., Inc., 836 F.2d at 881 ("[p]arties should not be allowed to 'run up' exorbitant fees and expenses when responding to papers filed in violation of Rule 11"); Gaiardo, 835 F.2d at 483 ("the duty of mitigation should minimize any excessive burden on the sanctioned party"); INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir.) ("A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims."), cert. denied, --- U.S. ----, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). And, as Judge Weis has aptly noted, "[i]n all phases of the fee determination, the district judge must cast a critical eye on the award request." Ursic v. Bethlehem Mines, 719 F.2d 670, 676 (3d Cir.1983).
 
 
 43
 The district court assessed costs against Bass totaling $21,423.21, consisting mostly of counsel fees. The government was awarded $4,260 in consideration of the labors of an Assistant U.S. Attorney who, according to his affidavit, expended 42.6 hours on the case. The court fixed $100 per hour as the reasonable rate for his services.[9] The district court awarded the balance of the sanction ($17,163.26) to the Legion, largely in consideration of 117.8 hours billed by three attorneys from two different law firms.[10] Although the district court accurately stated the governing legal principles and carefully delineated the factors involved in its decision to impose sanctions, it provided little insight into the basis for its determination of the sanctions amount. We will consider the award of fees to the government and Legion in turn.
 
 B. Fees to the Government
 
 44
 We have no difficulty with the district court's determination of fees due the government. That determination--that 42.6 hours was a reasonable amount of time to spend on research, writing several motions and a 26-page memorandum which capably and concisely covered several legal issues, coupled with in-court appearances--is plainly within the range of the court's discretion. This appeal does, however, raise a question of first impression in this circuit, as to whether the district court abused its discretion in the award of $100 an hour for the Assistant U.S. Attorney handling the case.
 
 
 45
 We have no doubt that the government may recover under Rule 11 when confronted with a frivolous action. See, e.g., Engh v. United States, 658 F.Supp. 698 (N.D.Ill.1987) (government recovery of Rule 11 sanctions for frivolous suit by taxpayers). The difficult question is that of the reasonable hourly rate for government attorneys. At first blush, it seems inappropriate for the services of an Assistant United States Attorney to be valued at some kind of market rate. However, upon reflection, we can perceive no difference between the situation of an Assistant U.S. Attorney and that of a public interest lawyer whose services, the Supreme Court has held, are to be valued at a market rate, even though he or she, like Assistant U.S. Attorneys, had no regular billing rate. See Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).
 
 
 46
 Finally, we have considered but reject the notion that, in a case such as this, in which the award of counsel fees to a plaintiff who prevails against the government is limited by EAJA, 28 U.S.C. Sec. 2412 (1982), any award of sanctions to a government defendant should be limited to the amount allowable under EAJA. The argument is attractive, i.e., that the government should not be entitled to collect from Bass as a sanction more than he could collect from it had Napier prevailed, and thus that EAJA sets the prevailing rate in such cases. However, to apply the EAJA standard would result in counsel for the Legion being paid at a higher rate than the government, an untoward result, particularly in this case, where government counsel used its time so much more economically.
 
 
 47
 Moreover, since EAJA was not intended to do any more than make it possible for certain litigants to recover modest fees against the government for prevailing in certain lawsuits, we see no reason to extend its umbrella to an area that it was not intended to cover. Congress, by its limited waiver of sovereign immunity, intended to limit the government's liability, not its recovery. Accord Harris v. Marsh, 679 F.Supp. 1204, 1333 n. 210 (E.D.N.C.1987) (stating that EAJA does not set $75 per hour cap on attorneys' fees sought by government counsel).
 
 C. Hourly Rate for the Government Attorney
 
 48
 A number of courts have concluded that the hourly rate properly charged for the time of a government attorney is the " 'amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.' " United States v. Kirksey, 639 F.Supp. 634, 637-38 (S.D.N.Y.1986) ($100 per hour reasonable for experienced U.S. attorney in 1982) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 471 (2d Cir.1974)); Hamer v. Lake County, 819 F.2d 1362, 1365 n. 9 (7th Cir.1987) ($85 per hour reasonable for state's attorney). We conclude that the district court did not abuse its discretion by awarding the government's attorney $100 per hour as a reasonable attorney's fee, in view of the Assistant U.S. Attorney's experience. See supra note 9.
 
 D. Fees to the American Legion
 
 49
 We react differently to the award of $17,163.26 in fees and costs to the American Legion's attorneys, however. We note at the outset that it seems paradoxical to award over $20,000 in fees for the defense of a case that the Legion itself maintains was so frivolous that it "crie[d] out for the award of sanctions." Amer. Legion Br. at 43. Although the district court rejected $51.96 for computer research, it accepted without discussion or modification the affidavits of the Legion's counsel as to the number of hours they expended and their proffered hourly rates. The hourly rates are not contested, but under our jurisprudence the calculation of the sanctions amount requires an inquiry by the court into both the reasonableness of the hourly rate and the reasonableness of the number of hours expended in this case. See Lindy Bros. Builders, Inc. v. American Radiator, 540 F.2d 102 (3d Cir.1976) (in banc).[11] However, the district court did not undertake an examination of whether the number of hours expended by the Legion was in actuality excessive. Had it done so we are confident that it would agree that the Legion's attorneys were guilty of overkill in their extensive briefing of this frivolous lawsuit.
 
 
 50
 The district court dismissed Bass' contention that the level of legal sophistication necessary for summary dismissal was "not that great" by noting that the contention simply amounted to an admission of the frivolous nature of the complaint. App. at 17. Although we agree that the statement supports the decision to sanction Bass, we conclude that the court erred in failing to consider whether the frivolousness also indicated that a less sophisticated or expensive response was required. As we stated above, the Rule 11 movant has a duty to mitigate by using reasonable means to terminate the litigation and to prevent costs from becoming excessive. In this case, the clearly frivolous nature of the complaint indicates that the expenditure of a substantial number of hours in defense of the suit is at least suspect, and we seriously doubt whether the Legion can justify spending more hours on the case than the government.
 
 
 51
 As we have noted, the Legion claims that its counsel expended 117.8 hours in, inter alia, preparation of motions, and writing an 11-page brief in support of a motion for summary judgment and a 10-page reply brief. In our view, however, the Legion has not advanced a credible justification for spending anywhere near 117.8 hours on this case. Moreover, one of the three issues in the Legion brief (regarding the statute of limitations) duplicated the government's arguments, despite the Legion's having discussed the case with the government. Although this overlap of legal defenses proffered by the defendants is not tremendous, a simple incorporation of the government's argument in the Legion's brief would have resulted in satisfaction of the affirmative duty to mitigate, which here included the duty not to duplicate arguments. Spell v. McDaniel, 616 F.Supp. 1069, 1093 (E.D.N.C.1985) (discussing court's scrutiny of unreasonable duplication of work by multiple counsel), aff'd in part and vacated in part, 824 F.2d 1380 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); Harris v. Marsh, 679 F.Supp. at 1333 n. 210 (same). We do not suggest that counsel are forbidden to brief as extensively as they desire or even to duplicate arguments of co-counsel (presumably on the theory that they will brief them better). All we hold is that they cannot receive counsel fees for duplicative or excessive effort.
 
 
 52
 In sum, we conclude that the district court abused its discretion under the circumstances in failing to examine the number of hours expended by the Legion to defend a patently frivolous claim. Although we have expressed doubt that the Legion can justify its expenditure of hours on this case, perhaps it can, and because it has not had the opportunity to do so, we will remand to the district court for a reconsideration of the Legion's sanctions award in accordance with the standards set forth in this opinion.[12]
 
 VI. CONCLUSION
 
 53
 For the foregoing reasons we will affirm the district court's order dismissing the complaint and the order awarding Rule 11 sanctions against plaintiff's counsel. We will also affirm the district court's order awarding costs and fees against Bass in favor of the government. However, we will vacate the order insofar as it awarded costs and fees in favor of the American Legion and remand for further proceedings consistent with this opinion. The appellee's motion for double costs, Fed.R.App.P. 38, will be denied, inasmuch as the appeal, which has resulted in significant relief for Bass, was not frivolous. The parties shall bear their own costs of the appeal.
 
 
 
 *
 Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court dismissed the 1976 action because Bass' firm failed to appear for several pretrial conferences and failed to submit a required pretrial memorandum
 
 
 [2]
 The privity of the "Thirty or More Unidentified Federal Agents" and of the "Ten or More Unidentified Veterans' Administration Agents, Servants or Employees" for the purposes of claim preclusion presents a more difficult question. Napier asserts that the addition of the "Thirty or More Unidentified Federal Agents" as defendants insulates the complaint from res judicata attack. The government asserts that the federal agents are in privity with the government defendants in the earlier actions under the Supreme Court's decision in Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03, 60 S.Ct. 907, 916-17, 84 L.Ed. 1263 (1940) ("Where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal.... There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."). As several courts have noted, however, Sunshine used the general term res judicata but referred to issue preclusion, not claim preclusion, and does not support the government's privity argument. See Headley v. Bacon, 828 F.2d 1272, 1275-80 (8th Cir.1987); Beard v. O'Neal, 728 F.2d 894, 897 (7th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984). However, because we conclude infra that all of the claims were barred by the statute of limitations, we need not determine whether the claims against the unidentified agents were also barred by res judicata
 
 
 [3]
 We fail to see how a conscripted soldier of the federal government falls under the New Jersey statute for workers' compensation. Moreover, even if this analogy were correct, we note that New Jersey has a two-year statute of limitations under workers' compensation as well. N.J.Stat.Ann. Secs. 34:15-41 (West 1988). The statute addressing compensation for occupational disease also provides for a two year statute:
 unless a petition is filed in duplicate with the secretary of the division within 2 years after the date on which the claimant first knew the nature of the disability and its relation to the employment....
 N.J.Stat.Ann. Sec. 34:15-34 (emphasis added). In any event, the 1960 and 1976 actions attest to the plaintiff's awareness of his "compensable disease," triggering the two-year statute of limitations.
 Napier's Bivens claim is also barred by the statute of limitations. Because Congress has not established a federal statute of limitations for Bivens actions, we must look to the most analogous state statute of limitations. See Wilson v. Garcia, 471 U.S. at 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (applying state statute of limitations in Sec. 1983 action); Chin v. Bowen, 833 F.2d 21 (2d Cir.1987) (applying state statute of limitations for personal injury actions to Bivens claim). The Sixth and Second Circuits have held that Bivens actions are " 'not significantly dissimilar to claims brought under Secs. 1981 and 1983,' " Chin, 833 F.2d at 23 (quoting McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988)), and thus that the state statute of limitations for personal injury claims is the applicable statute of limitations. We need not decide the question, however, because Napier's Bivens actions would be barred under either New Jersey's two-year statute for tortious personal injury actions, N.J.Stat.Ann. Sec. 2A:14-2 (West 1987), or its six-year catch-all statute, N.J.Stat.Ann. Sec. 2A:14-1 (West 1987).
 Though not addressed by the district court or in Napier's brief, Napier also relied at oral argument on the Japanese internment cases as support for the proposition that his claims are not precluded. See Hohri v. United States, 782 F.2d 227, 247 (D.C.Cir.1986) (concluding that "fraudulent concealment" of essential elements of a cause of action by the government tolls statute of limitations), vacated and remanded on other grounds, --- U.S. ----, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Napier does not allege that the government fraudulently concealed information essential to his case, however, and we have no reason to believe that it did so.
 
 
 [4]
 Napier's counsel agreed at oral argument before the district court, and does not here contest, that because the claims asserted against the Disabled American Veterans were the same as those asserted against the other defendants, the claims rise or fall on the disposition of the claims against the other defendants. Hence, we conclude that the complaint against the Disabled American Veterans was properly dismissed
 In addition, we conclude that the district court did not abuse its discretion in dismissing the complaint against the American Legion on the ground that Napier improperly served the Legion under Fed.R.Civ.P. 4(d). As the district court noted, "[a]n inquiry to the New Jersey Secretary of State would have readily disclosed the identity of the authorized agent." App. at 108. The district court also properly rejected Napier's argument that his service of the Department in good faith constituted "good cause" for extending the time period for filing under Fed.R.Civ.P. 4(j). Similarly, the district court correctly dismissed the complaint as to the American Red Cross under Rule 4(j) because as of the court's May 20 order Napier had failed to serve the Red Cross in any fashion and had failed to offer any justification for not doing so.
 
 
 [5]
 Napier's complaint states in Count 3, paragraph 4, that
 [t]he defendants did jointly, severally or concurrently reach an inconsistent and irrational result of granting total disability with regard to waiver of premiums from or sequential to September 1, 1984, for government life insurance while denying total disability or remedy from the result of the denial of constitutional rights mentioned herein with regard to Veteran's [sic] Benefits or other benefits to which George Napier was entitled as well as remedy by litigation or otherwise for the violation of George Napier's constitutional rights.
 App. at 16.
 
 
 [6]
 Although the amended notice of appeal states that it is from the May 20 order only, the liberal construction accorded notices of appeal, see Gooding v. Warner-Lambert Co., 744 F.2d 354, 357 n. 4 (3d Cir.1984), mandates that we treat the appeal as also lying from the June 29 order
 
 
 [7]
 We have also held that where the rights of the lawyer and the client are inextricably intertwined, the client may have standing to appeal a sanction order against the lawyer. Johnson v. Trueblood, 629 F.2d 302 (3d Cir.1980) (where order denying pro hac vice status would deny client his attorney of choice, court has jurisdiction to hear client's appeal of that order); cf. Marshak v. Tonetti, 813 F.2d 13, 21-22 (1st Cir.1987) (where plaintiff had "no pecuniary or ... other sufficient interest in the award to confer standing on appeal" and the attorney "was perfectly able to appeal the sanction order had he so chosen," plaintiff could not appeal an order sanctioning his counsel). We need not determine whether Bass' and Napier's actions were inextricably intertwined here, however, because we conclude that the order that rendered the sanction against Bass final was the June 29 order and thus that the August 4 appeal, which fell well within the 60-day deadline, was timely
 
 
 [8]
 Rule 11 provides in pertinent part:
 The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 [9]
 The Assistant U.S. Attorney had been practicing for five years. He came to the U.S. Attorney's office after a federal judicial clerkship and a stint in the litigation department of a major New York City law firm
 
 
 [10]
 The court calculated the award using the following data:
 E. Hirschhorn 59.75 hours @ $150 $8962.50
R. Chartash 45.75 hours @ $125 $5750.00
R. Vort 12.30 hours @ $150 $1840.00
 ---------
 $16552.50
 To this figure, the court added disbursements of $511.99 and $150.68, less $51.96 for disallowed computerized research. The total amounts to $17,163.21.
 
 
 [11]
 Although the district court concluded that the defendants' counsel did not violate their duty to mitigate, it did not weigh the need for the number of hours spent on the case by the Legion's counsel
 
 
 [12]
 Bass maintains that the district court should not have considered his ability to pay the requested sanction. The Legion submitted to the district court a reprint of an article about Bass in the Harvard Law Bulletin (an alumni magazine) containing his statement that he is a regular "Langdell Donor" to his alma mater, the Harvard Law School, a designation conferred only upon contribution of $10,000 or more to the school. Bass does not contest the accuracy of the "Langdell Donor" designation. Instead, Bass contends the evidence of substantial donations unduly prejudiced the court as to his financial position
 Ability to pay is an appropriate consideration when determining the level of a sanction. See Monkelis v. Mobay Chemical, 827 F.2d 935, 936 (3d Cir.1987) (considering "the ability of the offending parties to satisfy an award of attorneys' fees" under ERISA fee shifting provision). Fairness, however, dictates that if ability to pay is to be taken into account, it may not be determined on a random basis as appears to have been the case here, but only on a developed and balanced record. People of modest means may give large charitable contributions to the exclusion of wordly expenditures.
 Although the significance of the ability to pay may well be muted by our discussion of the sanctions award, to the extent that the district court considers Bass' ability to pay on remand, it should be guided by this discussion.