MURDOCK, Justice
(dissenting).
I respectfully dissent.
A.
The main opinion cites State Board of Education v. Waldrop, 840 So.2d 893, 899 (Ala.2002), for the proposition that “the circuit court’s failure to adjudicate the amount of the attorney fees to be awarded” to Charles O. Wall II as a sanction for the contempt of which Frank A. Moultrie was found guilty “did not affect the finality of the contempt adjudication.” 143 So.3d *140 at 134. Waldrop is distinguishable from the present case, however, because it was not a contempt proceeding. The case of Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), upon which Waldrop relies, also is distinguishable because it too was not a contempt proceeding. As in Waldrop, the judgment evaluated for appealability in Budinich was a judgment resolving underlying tort claims as to which an award of attorney fees was a collateral issue.
Here, the adjudication at issue is not of an underlying tort or contract claim, as to which an award of attorney fees would in fact be collateral or incidental. Instead, the claim is one of contempt. As to that claim, the award of attorney fees is an intrinsic part of the relief sought and obtained.
In a conventional tort or contract action, the purpose of the action is to have the court address wrongful, extrajudicial behavior of a defendant, typically by providing relief in the form of money damages or an injunction. In contrast, the purpose of a contempt claim is to have the court address the wrongful litigation behavior of a party, usually by means of a “sanction” for that behavior.[10] Typical of such sanctions is an award of attorney fees against the contumacious party. Until the amount of those fees are set by the court, therefore, the contempt judgment is not final. As to a contempt claim, there can no more be a final, appealable order on the merits based merely on decision that there is to be a payment of attorney fees as a sanction without a decision as the amount of the fees thus to be paid than there could be a final, appealable order on the merits of a contract or tort action based merely on a decision that there is to be a payment of compensatory and punitive damages without a decision as to the amount of the damages to be paid.
In Budinich, the Supreme Court observed that “ ‘[a] “final decision” generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.’ Catlin v. United States, 324 U.S. 229, 233 (1945).” Budinich, 486 U.S. at 199. No such executable “final decision” as to the claim seeking a contempt judgment and sanctions was entered in this case until the trial court did in fact set the amount of those sanctions.
The Budinich Court continued:
“A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order. See, e.g., Brown Shoe Co. v. United States, 370 U.S. 294, 308-309 (1962); Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 513-516 (1950).”
Id. (emphasis added). Unlike the collateral relationship between the resolution of a request for attorney fees and the adjudication of conventional tort and contract claims as in Budinich, the resolution of an attorney-fee claim in a contempt action will satisfy the above-emphasized test. That is, because it is the substance or essence of the claim and relief pursued in the contempt action, the setting of the amount of the sanction necessarily “will ... alter the order or moot or revise decisions embodied in the order.”[11]
The Budinich Court also stated:
*141 “In White v. New Hampshire Dept, of Employment Security, 455 U.S. 445 (1982), we held that a request for attorney’s fees under 42 U.S.C. § 1988 is not a motion ‘to alter or amend the judgment’ within the meaning of Federal Rule of Civil Procedure 59(e) because it does not seek ‘reconsideration of matters properly encompassed in a decision on the merits.’ 455 U.S., at 451. This holding was based on our conclusion that ‘a request for attorney’s fees under § 1988 raises legal issues collateral to’ and ‘separate from’ the decision on the merits. Id., at 451-452.... See also Sprague v. Ticonic National Bank, 307 U.S. 161, 170 (1939) (observing that a petition for attorney’s fees in equity is ‘an independent proceeding supplemental to the original proceeding and not a request for a modification of the original decree’).”
486 U.S. at 200 (emphasis added). Here, the attorney-fee request is a, if not the, primary “matter[] properly encompassed in a decision on the merits ” of the contempt petition.
The Budinich Court further explained:
“If one were to regard the demand for attorney’s fees as itself part of the merits, the analysis would not apply. The merits would then not have been concluded, and [28 U.S.C.] § 1291 finality would not exist. See Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 740-742 (1976). As a general matter, at least, we think it indisputable that a claim for attorney’s fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action. At common law, attorney’s fees were regarded as an element of ‘costs’ awarded to the prevailing party, see 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 2665 (1983), which are not generally treated as part of the merits judgment, cf. Fed. Rule Civ. Proc. 58 (‘Entry of the judgment shall not be delayed for the taxing of costs’).”
486 U.S. at 200-01 (emphasis other than on “itself’ added).
The opposite of everything the Budinich Court said in the foregoing passage as to the relationship of attorney fees to the merits of the underlying tort claim at issue there can be said of the relationship of an attorney-fee award to the contempt claim here. “[T]he demand for attorney’s fees [is] part of the merits ” and therefore “the analysis [does] apply.” Perhaps most telling is the fact that, in regard to a conventional tort claim, an award of attorney fees is in fact collateral and, as the Budinich Court explained, “does not remedy the injury giving rise to the action,” whereas the opposite is true here. Budi-nich, 486 U.S. at 200. The gravamen of the contempt action here is the bad litigation behavior of the opposing party. Correcting that behavior is the purpose of the action. Sanctions in the form of attorney fees are intrinsic to that end and are a central part of the relief sought, not incidental to the relief sought. Until such sanctions have been awarded, there is no *142 final and appealable judgment on the contempt petition itself. Furthermore, treating the contempt judgment as final before the requested sanction for the contempt is decided upon by the trial court is to encourage piecemeal appeals, as well as appeals from orders that might not have been appealed if the defendant had known the ultimate amount of sanctions that would be awarded.
Although there are decisions that take a different view of the Budinich holding as it relates to contempt proceedings,[12] I find more persuasive the view expressed above and by the United States Court of Appeals for the Third Circuit in Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080 (3d Cir.1988). In Napier, the federal appeals court addressed an order of a federal district court entered on May 20, 1987, in which the district court ruled that “ ‘sanctions shall be imposed on plaintiffs counsel.’ ” Id. at 1084. The amount of those sanctions, however, was not set by the district court until a later date, June 29, 1987. The Court of Appeals explained the difference between (a) that sanction award and the contempt judgment of which it was a part and (b) the award of attorney fees that was collateral to the tort judgment in Budinich:
“The defendants argue that [the plaintiffs] appeal with respect to the sanctions was untimely. They say that [the plaintiff] had to appeal the May 20, 1987 order determining that sanctions would be levied against him and that his August 4 appeal was out of time....
“As a general rule, when a district court determines liability before determining the damages amount, the liability determination is not appealable until judgment has been entered on the amount. In re Jeannette Corp., 832 F.2d 43, 45 (3d Cir.1987) (‘until fixed in amount, an award of attorneys’ fees is not a final order for purposes of appeal’); Sauter v. Ross Restaurants, Inc., 674 F.2d 194, 197 (3d Cir.1982) (decision is appealable if it terminates litigation and ‘leaves nothing to be done but to enforce’ the judgment). In re Jeannette Corp. held that ‘[i]f sanctions are to be an assessment of counsel fees or expenses, they must be fixed before the order is final and appealable.’ 832 F.2d at 46. In re Jeannette Corp. is disposi-tive of this question unless recent Supreme Court jurisprudence undermines it.
“In Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the Supreme Court held that a determination of liability and damages is final despite a pending determination of costs and attorney’s fees. The rationale of Budinich is that the determination of costs and fees following entry of judgment involves considerations distinct from the underlying merits of the action itself. See West v. Keve, 721 F.2d 91 (3d Cir.1983) (viewing fee determination as collateral to merits decision thereby requiring appellants to appeal from earlier merits decision). We acknowledge a superficial similarity between the determination of the sanctions amount here and a determination of costs and attorneys fees such as might render the district court’s May 20 order an appealable order. We think that the better approach, however, is to analogize the situation before us to the traditional liability and damages scenario: the May 20 order determined liability, but the court’s order was not final and appealable until the June 29 order, which fixed damages.... Cf. United *143 States v. Sleight, 808 F.2d 1012 (3d Cir.1987) (in criminal case, order that reasonable restitution shall be paid is not the final, appealable order, but only the order stating exact amount is appeal-able).
“More importantly, however, the decision to impose sanctions and the decision fixing the amount of the sanction are far more closely intertwined, both substantively and practically, than the decision about counsel fees and costs is to the underlying merits. Rule 11 [, Fed.R.Civ.P.,] ‘combines the concepts of deterrence and reimbursement,’ hence the district court in a sanctions determination may require ‘the offending client, lawyer or both to pay all or part of the adversary’s counsel fees incurred as a result of the violation.’ Gaiardo v. Ethyl Carp., 835 F.2d 479, 482 (3d Cir.1987) (emphasis added [in Napier ]).... Moreover, policy reasons support this view. To require an appeal from the decision to impose sanctions would engender needless appeals — which never would have been filed had the sanctions been fixed in a relatively small amount, a not uncommon occurrence. See In re Jeannette Corp., 832 F.2d at 45 (noting ‘concerns about duplicate expenditures of time and resources in coping with separate appeals initially from the award of fees and later from the calculation of the amount ’). Also supporting our conclusion is our longstanding antipathy to piecemeal appeals. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 92 (3d Cir.1988) (adopting supervisory rule requiring counsel to file Rule 11 motions before entry of final judgment by district court ‘to eliminate piecemeal appeals’). Thus nothing in Budinich undermines our earlier jurisprudence.”
855 F.2d at 1089-90 (some emphasis added; footnotes omitted). Cf. John v. Barron, 897 F.2d 1387, 1390 (7th Cir.l990)(holding that an award of attorney fees as a “sanction” for a violation of Rule 11, Fed.R.Civ.P., without setting the amount of that sanction is not a final, appealable order); Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc., 873 F.2d 1327, 1329 (9th Cir.1989) (holding in a Rule 11 proceeding that “[t]he district court’s first order imposing sanctions but not setting an amount was ... not a final or appealable order” because “[a]n order awarding attorney’s fees which does not fully dispose of the issue of attorney’s fees is not a final, appealable order”); Gates v. Central States Teamsters Pension Fund, 788 F.2d 1341,1343 (8th Cir.1986) (holding that an order awarding attorney fees as a sanction for a Rule 11 violation “without determining the amount of that award is not an order which ‘leaves nothing for the court to do but execute upon the judgment.’ Catlin v. United States, 324 U.S. 229, 233 (1945),” and therefore is “not a final and appealable order”).
As Professors Wright and Miller have put it, “[a] determination that contempt has occurred is not final if the question of sanctions is postponed.... Finality, in short, requires determination of both liability and sanction, just as with ordinary civil and criminal proceedings.” 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3917 (2d ed. 1992).
B.
I am concerned about a number of aspects of the award of attorney fees in this case. These include the sealed nature of evidence upon which the trial court based its judgment and its apparently unobject-ed-to unavailability (even in redacted form) to opposing counsel, as well as its unavailability to this Court as the result of its unobjected-to absence from the record on *144 appeal.[13] In addition, I am concerned about the fact that the trial court apparently made its decisions based upon only 3 or 4 of the 12 factors listed in Peebles v. Miley, 439 So.2d 137 (Ala.1983), and that the trial court does not appear to have been sufficiently specific as to its reasoning. Ultimately, a substantial question exists as to whether the total amount awarded to multiple attorneys and groups of attorneys for a limited amount as to a limited period of time was excessive and redundant. I dissent as to the affirmance of the attorney-fee award without reaching the merits of these issues, however, because I do not think we should address the merits of the attorney-fee issue without first addressing the merits of the contempt judgment itself, which, for the reasons explained in Part A of this writing, I believe has been timely appealed.

. Wall concedes on page 14 of his brief to this Court that the contempt petitions he filed were for the very purpose of obtaining "sanctions" against Moultrie; the attorney-fee award was by far the largest part of the "sanction" sought and awarded.

. Perhaps the easiest illustration would be the setting of an attorney-fee award in an *141 unduly small amount. This clearly would have the practical effect of "alter[ing],” “moot[ing],” or "[revisjing” an earlier contempt judgment in which the trial court announced that it would award "reasonable attorney fees” incurred by the petitioner in responding to the contemnor’s contumacious conduct. A similarly unexpectedly low setting of fees collateral to a judgment for breach of contract or in tort would not have the effect of "revising” or “altering” that judgment; execution on the conventional judgment to enforce injunctive orders or collect money damages could proceed unaffected and "lirarevised” by the subsequent setting of attorney fees.

. See, e.g., In re Tetracycline Cases, 927 F.2d 411 (8th Cir. 1991).

. As a result of its absence of from the record, this Court does not even have access to statements documenting the number of hours upon which the trial court based its award, despite the fact that time expended generally is viewed as the cornerstone of attorney-fee awards in cases of this nature.